## NEELY v. CARTER *et al.*

96  197
f109 247

96  197
112  251
f112 358

96  197
f118 344

96  197
115   48

96  197
120 1059

1. A proceeding was instituted to establish a copy of a deed and a copy of a power of attorney, both of which were alleged to have been lost.   The deed purported to have been signed by several makers in person, and by two other makers through an attorney in fact acting under authority conferred by the alleged power of attorney, which purported to have been executed by these two. One of the latter, who was the sole living survivor of the alleged makers of the two instruments, and the heirs at law of all the others, were made defendants to the proceeding, some of the heirs being minors for whom a guardian *ad litem* was appointed.   An answer in resistance to the proceeding was filed by the alleged surviving joint maker, and subsequently adopted as the defense of the minors in an answer filed in their behalf by the guardian *ad litem.*   *Held,* that this was a " suit  .  .  defended by  .  . persons jointly  .  .  interested" within the meaning of paragraph (b) of section one of the evidence act of 1889.

2. If such a proceeding had been instituted by the grantee in the alleged lost deed, he would have been incompetent to testify that he saw thereon the name of a deceased maker in the handwriting of the latter.   The object being to prove the genuineness of the signature, to permit such testimony would, in effect, be allowing the witness to testify in his own favor " as to " a transaction solely

between himself and the deceased party. As thus proving the signature would only be another method of proving the fact that the deceased actually subscribed his name to the paper, and as the witness would not be competent to testify to this fact directly where the circumstances were such that no other alleged maker could deny the truth of his testimony, he certainly would not, under like circumstances as above indicated, be permitted to testify indirectly, in the manner stated, to the existence of the same fact. It follows, under paragraph (d) of the section cited, that such grantee, after selling and conveying with warranty of title the premises described in the alleged lost deed, and being, because of such warranty, interested in the result of a proceeding instituted by his vendee to establish a copy of the deed, was incompetent to testify as herein stated in favor of the plaintiff in that proceeding.

3. A copy of an alleged lost deed, purporting to have been executed by several joint makers, cannot be established without due proof of its execution by all of them. Proof of its execution by one only is not sufficient.

4. The evidence in the present case not being such as to warrant a finding that any of the alleged makers, save one, had signed the deed of which it was sought to establish a copy, the court was right in granting a nonsuit.

May 13, 1895. Argued at the last term.

Proceeding to establish copy-deed. Before Judge RONEY. Burke superior court. May term, 1894.

E. H. CALLAWAY and J. J. JONES & SON, for plaintiff. JOHNSTON & BRINSON, for defendants.

LUMPKIN, Justice.

A proceeding was instituted in the superior court of Burke county by Neely against Edward A. Carter and others, to establish copies of a deed and power of attorney alleged to have been lost. The plaintiff was the vendee of Mrs. Electra A. Carter and her daughter, Annie Carter, who were the grantees in the alleged lost deed. This deed purported to have been executed by several joint makers, all of whom had died except the defendant Edward A. Carter. The other defendants to the proceeding were the heirs at law of the deceased persons whose names appeared as makers of the two instruments

of which copies were sought to be established.    One of
these alleged makers was Emma Carter.    Her name,
and that of Edward A. Carter, purported to have been
signed to the deed by their attorney in fact, Heman H.
Perry, who had the authority to do so if the power of
attorney above mentioned was genuine.

An answer was filed by Edward A. Carter, objecting
to the establishment of the writings in question, partic-
ularly the power of attorney alleged to have been exe-
cuted by himself and Emma Carter, the answer averring
that neither he nor the said Emma had ever executed
"the so-called power of attorney."    The other defend-
ants, who were minors appearing by next friend, adopted
the defense of Edward A. Carter.

It was, of course, incumbent upon the plaintiff to
present proof showing the due execution of the alleged
lost papers.    This he endeavored to do, but at the trial
experienced considerable difficulty, because some of the
persons whose names appeared on these papers as attest-
ing witnesses were dead, and the recollection of the
living witnesses was so uncertain and imperfect as to
render their testimony of but little probative value.
The result of the trial was the granting of a nonsuit.
This action of the court, and the rejection of certain
evidence, present the questions made for review.

1. In the first place, it seems clear that the proceed-
ing with which we are now dealing was a suit "defended
by persons jointly interested."    Defeating the establish-
ment of the lost instruments resulted, we are bound to
presume, in some benefit to Edward A. Carter and his
minor codefendants; and whatever that benefit was, their
interest in it must have been, to some extent, similar to
his.    We therefore think the case falls literally within
the description embraced in the language used in para-
graph (b) of section one of the evidence act of 1889.
We will, in the next division of this opinion, discuss

the incompetency to testify, imposed upon witnesses by that paragraph.

2. The answers of Mrs. Electra A. Carter to interrogatories were offered in evidence. Among other things, she testified, in effect, that a power of attorney and a deed, of which the papers before the court were substantial copies, had been at one time in her possession; that the names of Edward A. and Emma Carter appeared on the power of attorney as makers thereof, and that the names of certain other porsons (the alleged grantors) appeared upon the deed as makers of that instrument; that she was familiar with the handwriting of all these persons, and from such knowledge could testify that the signatures of all were genuine. She further testified that the original papers were not delivered to her by any of the persons whose names were subscribed to the same, but were handed to her by her attorney. The court allowed so much of the above recited testimony as related to the genuineness of the signature of Edward A. Carter to be read to the jury, but rejected all of the testimony relating to the genuineness of the signatures of the other alleged makers of the two instruments.

In order to test the admissibility of that portion of Mrs. Carter's testimony which the court rejected, we must first examine the question as it would have stood had she herself been the plaintiff in the action. It would then have been a suit instituted by herself and defended by persons jointly interested, and she would not, under the above cited paragraph of the evidence act, have been competent to testify in her own favor as to transactions or communications solely with a "deceased . . person jointly liable or interested, and not also with a survivor thereof." To what "person" does the above quoted language refer? Certainly not a person interested in the result of the pending suit, for no de-

ceased person can possibly be interested in litigation or other earthly affairs of any description. The law, therefore, must mean a person who was, while still in life, interested in the transaction, evidence as to which has, after his death, become material in a lawsuit. The execution and delivery of the deed in question, if genuine, certainly was a transaction between Mrs. Carter and the grantors, in which each of the parties, while in life, was jointly interested.

If Mrs. Carter had been introduced as a witness to prove that she actually saw one or more of the deceased makers sign the alleged deed or power of attorney, and that the others, including Edward A. Carter, were present at the time, the testimony would have been admissible, because the act which her testimony would thus prove would not be a transaction solely between herself and one only of the makers, since deceased, for Edward A. Carter, another person jointly interested in the transaction, being present, could deny the truth of what she stated. But if Mrs. Carter was offered to prove that she saw one of the deceased makers sign his name to one of the instruments at a time when none of the other makers were present, her testimony would then be clearly inadmissible, because the act sought to be proved by her testimony would, to all intents and purposes, be the same thing in effect as a transaction solely between herself and this particular deceased maker, in which each of the other joint makers, whether he signed before or after this time, would be vitally interested. In other words, Mrs. Carter would not be competent to prove the direct physical fact of execution, when it occurred outside of the presence of the other joint makers, and it would thus be impossible for a survivor of them to meet and deny her evidence.

We think it quite clear that she could not be permitted to testify indirectly to that which she would not be

permitted to swear to directly. To swear to the genuineness of a signature purporting to have been made by one of the deceased makers would only be another way of proving the physical fact of execution. Such proof would be merely secondary evidence, the object of which would be to supply the place of direct evidence of actual execution, in a case where higher and more satisfactory proof of that fact was not forthcoming or available. The policy of the law, which clearly would exclude Mrs. Carter from giving direct evidence of execution, likewise would render her incapable of giving evidence of a secondary character which would accomplish the same result, and which, indeed, would be worthless for any other purpose than that of supplying the very evidence she would be precluded from giving by direct and positive proof. No other view of the question seems tenable. On the trial of a man for forgery, his wife would certainly be incompetent to swear directly to the commission of the offense in her presence; and she would be equally incompetent as an expert witness to fasten the crime upon him by testifying to her opinion that the signature to the forged paper was in his handwriting. Her testimony would be rejected because she is not a competent witness at all in such a case, and not because the evidence itself would be illegal if coming from another witness. Neither in a case like that, nor in the one now under investigation, is it questionable that evidence of this character is admissible; but the real objection to receiving it lies in the legal disqualification of the proffered witness to supply the same. In both instances, the statute renders the witness incompetent to testify. In the one case, the witness cannot testify to any fact; in the other he cannot testify to facts of a certain class, and as to this class he is forbidden from giving any evidence whatsoever,— whether direct or secondary, positive or negative, or of

any other character.  In the present case, the proper
foundation was laid for the introduction of secondary
evidence to show the due execution of the papers in
question; and the proof offered, which we hold was
properly rejected, would have been clearly admissible
had it come from the proper source.  Coming from a
demented person, or from a witness incompetent for
any other reason, such proof cannot be received.  The
effect of the evidence act of 1889 is to render certain
classes of persons therein designated incompetent to
appear as witnesses at all in regard to certain transac-
tions.  The law-making power had in contemplation
the temptation which might arise from self-interest to
swear falsely as to dealings or communications with
one whose voice had been silenced by death, and who
therefore could not contradict the living witness.  The
temptation of a witness to swear falsely when offered to
supply secondary evidence, is just as strong as when the
witness is called upon for positive proof; while the fear of
punishment for perjury, remote at best, is almost if not
entirely removed where a witness merely undertakes to
state his opinion as to the genuineness of a given sig-
nature, instead of positively asserting direct knowledge
of the fact of the execution of a paper.

Thus far we have been dealing with the question
which would be presented if Mrs. Carter had been a
party plaintiff seeking to establish copies of the alleged
lost instruments.  She was not in fact, as we have seen,
a party to the case; but having sold the land to Neely,
and warranted the title, she is, without doubt, interested
in the result of the case.  Therefore, under para-
graph (d) of the first section of the above recited act,
she was clearly incompetent to testify in Neely's favor
as to anything she would have no right to swear to in
her own behalf were she the plaintiff in the action.

It follows from the above, that the trial judge prop-

erly excluded certain portions of Mrs. Carter's testimony which we have alluded to in the beginning of this discussion.

Although fully satisfied with the conclusion we have reached, it may not be amiss to call attention to an incongruity in the operation of the evidence act of 1889, which the General Assembly doubtless did not intend, but provision against which, by the use of appropriate phraseology, was most probably overlooked.

Paragraph (a) of the first section of that act declares, that where a suit is instituted or defended by the personal representative of a deceased person, the opposite party shall not be permitted to testify in his own favor as to transactions or communications with such deceased person. According to the decisions of this court in *Flowers* v. *Flowers*, 92 *Ga.* 688, and in *Gunn* v. *Pettygrew, et al.*, 93 *Ga.* 327, in order, under the above cited paragraph, to exclude a party to a case from testifying in his own favor, it would have to appear that the suit was instituted or defended by an administrator, executor, or other person entitled to represent the decedent in the ownership or management of his general estate. With the exception provided for by the act of December 12th, 1882 (Acts of 1882–3, p. 47), authorizing a wife who is the sole heir of her deceased husband to take possession of his estate, on certain conditions, without administration, an heir at law is not the "personal representative" of his deceased ancestor. Therefore, where a suit is instituted or defended by an heir at law, the opposite party would not, under the above paragraph, be excluded from testifying in his own favor as to transactions with the deceased ancestor, an inquiry into which was involved in the litigation. It would accordingly seem, that if Mrs. Carter had instituted a proceeding against a single individual for the purpose of establishing a copy of a deed alleged to have been executed by the ancestor of the defendant, she would not have been

incompetent to testify as to transactions between herself and such ancestor; and it follows that in a case instituted for a like purpose by her vendee against a single heir at law, she would be likewise competent to testify. Apparently there should be no difference in the rules of evidence where such a suit was instituted against several heirs at law; but in a case of the latter kind, the witness, as we have shown, is excluded under paragraph (b) of the above cited section, because offered to testify as to forbidden matters in a suit defended by persons jointly interested. The only reason why the witness is competent in the one case, and incompetent in the other, is simply because the law expressly so declares, and we have no option but to enforce it as it is written. It would, perhaps, be well for the General Assembly to give this matter attention.

3–4. In order to duly establish a paper as a copy of a lost instrument, it must be done in such manner as to bind all the parties to that instrument. The court cannot truly adjudge that the copy offered is a correct and true copy of the lost original, unless the proof satisfactorily shows that in all essential respects it is substantially such a copy. Surely, in the case of a paper which purports to have been executed by several persons, the fact that it was executed by each and every one of them is vitally essential; and where a copy is produced having affixed thereto the names of several persons as makers, and there is no satisfactory proof of the due execution of the alleged original, save as to one only of the makers, that copy cannot be established so as to take the place of the original. The cases of *Bond* v. *Whitfield*, 28 *Ga.* 537, and 32 *Ga.* 215, and *Jefferson* v. *Bowers*, 33 *Ga.* 452, may be cited as directly in point. In the present case there was no sufficient proof of the execution of either of the papers, save as to Edward A. Carter; and accordingly, the court was right in granting a nonsuit.

*Judgment affirmed.*