*Hendricks & Christian,* for defendant.

## WEEKS *v.* HOSCH LUMBER COMPANY *et al.*

1. Where, in a certificate to a transcript of a record in the court of ordinary, the ordinary described himself as "ordinary and ex-officio clerk of said court of ordinary of said county," and signed the certificate in the same manner, this was a sufficient statement that the ordinary and the clerk were the same person to admit the transcript in evidence.

2. A special trust as to the sale and conveyance of land, conferred by a will on three executors, can not be executed by one of them selling and making a deed.

(a) Such a deed could not be upheld by parol evidence tending to show that the other two executors took no active part in administering the estate, and that the executor making the sale and conveyance was the managing executor.

(b) Where a deed is apparently offered as conveying title and rejected as invalid, if the person claiming under it desires to have it admitted as

color of title in connection with evidence of possession thereafter to be offered, he should so tender it or call the attention of the court to the purpose of its offer as color of title.

3. Where in an action of ejectment the defendant offered in evidence certain deeds, which were properly rejected when and as they were offered, and afterwards he offered evidence to show possession, but no color of title, and it alone was not sufficient to show prescription, and its admission could not have altered the result, ruling it out will not require a reversal.

4. Although evidence may have been admissible to show adverse possession at the time of the making of an administrator's deed to a purchaser of land, yet where the same result of the case was inevitable, regardless of whether such evidence was admitted or not, its rejection will not cause a reversal.

Argued May 7,—Decided November 19, 1909.

Ejectment. Before Judge Mitchell. Colquitt superior court. October 6, 1908.

An action of ejectment in the common-law form was brought by John Doe on the several demises of the Hosch Lumber Company, R. E. Davison as administrator de bonis non cum testamento annexo of the estate of James Davison deceased, C. J. Haden, Ella Martin Davison, James Davison, Mary Pearl Davison, and Temperance Estelle Davison, jointly and severally, against Richard Roe, casual ejector, and J. S. Weeks claimant of title. The defendant pleaded the general issue, and also "that he and those under whom he claims have been in the open, exclusive, notorious, continuous, and bona fide possession of said land under written color of title." It appeared that both parties claimed under James Davison. One Davant, executor of Davis, made a quitclaim deed to Norman, and Norman conveyed to the defendant. Later an administrator de bonis non was appointed on the estate of Davison. He conveyed to Haden. Afterwards he made a deed reciting that the estate of Davison had been fully administered pursuant to the terms of the will, and all debts had been fully paid, and conveying to the devisees in the will "all the right, title, and interest in the real property of said estate that may yet remain in said estate," designating certain lots including the one now in suit. The devisees under the will of Davison conveyed to Haden. Between the dates of the two conveyances to him, Haden conveyed to the Hosch Lumber Company. On the first trial the judge directed a verdict for the defendant. The judgment was reversed, this court holding that the deed from

Davant, one of the three executors of Davison, was not authorized by the will, which provided for the testator's wild lands (including the lot in dispute) to "be sold at such time and place as may be to the best interest of my estate, at the discretion of my executors and the ordinary of this [Greene] county." *Hosch Lumber Company* v. *Weeks,* 123 *Ga.* 336 (51 S. E. 439).

On the second trial the plaintiffs made out a prima facie case. The defendant tendered in evidence the deed from Davant, executor of Davison, to Norman, being a quitclaim deed. Objection was made to this, on the ground that it was void and that it was the personal deed of Davant. The defendant then offered certain depositions tending to show, that Davant was the active executor of the estate of Davison, and with the consent of the other two executors managed the affairs of the estate while all three were in office, and so continued to act after Overton resigned, until he himself resigned; that Overton and Mrs. Davison did not have any active management of the estate, but left the business of it entirely to Davant, who, in the year 1882 (in which year the deed to Norman was dated), made all the returns and signed all the papers connected with the estate; that about 1896 or 1897 Haden entered into correspondence with the son of Mrs. Davison, making inquiry about the lots of land owned by his father; that the younger Davison thought the title valueless on account of certain transactions with one Newsome and one Sawtell, the mismanagement of the estate, and the lapse of time; that Haden thought the deed from Davant to Norman void; that Davison explained the details of certain transactions between his mother and one Newsome and Sawtell; and that finally Haden purchased and paid $200 or $250, taking a deed from the administrator de bonis non, but causing to be inserted in it a consideration of $1,000. Depositions of Norman were also offered to show that he bought the land from Davant as executor of Davison, paid the price stated in the deed, had no notice of any kind to indicate that the deed was not good, paid full value, and believed that it was effective to pass title out of the estate of Davison deceased, and that he afterwards sold the land in dispute to Weeks for $125. The court rejected the deed from Davant, executor, to Norman, on the ground that it was void as an executor's deed, and also rejected the evidence offered in support of it. Defendant then offered in evidence a deed from

Norman to Weeks, covering the lot in dispute. This was rejected on the ground that it was not connected with any person having title, no title being shown in Norman, the grantor. Defendant offered in evidence a turpentine lease, dated January 8, 1895, from Weeks to one Horne, conveying all the turpentine timber on certain lots, including the one in dispute, to be used, worked, and operated for the purpose of manufacturing rosin and spirits of turpentine from the eighth day of January, 1895, for the full term of three years from the date of boxing. It recited a valuable consideration, and was attested and recorded. This was rejected on the sole ground that no title had been shown in Weeks. Defendant then offered to prove by Horne and Weeks, that immediately after the execution of the turpentine lease they began boxing and working for turpentine purposes all the pine trees on the land in dispute; that it was covered entirely and completely with a growth of pine trees capable of being worked for turpentine purposes, except a small, unimportant portion thereof; and that they were in possession of the lot, boxing, hacking, and otherwise working all the trees thereon capable of being worked for turpentine purposes, and during that time were in as full possession of the land as the manufacture of turpentine and naval stores from trees can give possession. This evidence was rejected. The defendant rested. The court directed a verdict for the plaintiffs, and the defendant excepted.

*John A. Wilkes* and *Shipp & Kline,* for plaintiff in error.

*Edwin L. Bryan* and *E. K. Wilcox,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. In making out their title, the plaintiffs introduced in evidence a certified copy of the letters of administration de bonis non cum testamento annexo on the estate of Davison deceased, issued to R. E. Davison in 1894, and also a certified transcript of the application of Davison, administrator de bonis non, for leave to sell the wild lands at public or private sale, and of the order of the ordinary granting it. The certificate to each of these transcripts was in similar form. It recited that "I, Jas. H. McWhorter, ordinary and ex-officio clerk of said court of ordinary of said county, do hereby certify that the above and foregoing copy," etc. It concluded with the words, "Given under my hand and seal of office, this 1st day of April, 1903," and was signed, "Jas. H.

McWhorter, Ordinary and ex-officio clerk court of Ordinary for Greene County, Georgia." Objection was made to these transcripts, on the ground that it did not appear that the ordinary had no clerk, and that if there were a clerk of the court of ordinary, he and not the ordinary should have signed the certificate. The objection was overruled. "The ordinaries are, by virtue of their offices, clerks of their own courts, but they may, at their own expense, appoint one or more clerks, for whose conduct they are responsible, who hold their offices at the pleasure of the ordinary." Civil Code, §4247. "Such appointed clerks may do all the acts ordinaries could do, not judicial in their nature." §4248. Before entering on their duties they must give bond. §4249. "It is the duty of such clerks, or the ordinaries acting as such, . . to give transcripts likewise as they are required, and when the ordinary and the clerk are the same person, so to state in the certificate." §4250. In *Lay* v. *Sheppard,* 112 *Ga.* 111 (37 S. E. 132), it was held that a certificate signed by an ordinary for the purpose of authenticating a transcript from the record of file in his court does not conform to law unless it affirmatively discloses whether or not such ordinary was also the clerk of that court. See also *Sellers* v. *Page,* 127 *Ga.* 633 (56 S. E. 1011) ; *Smallwood* v. *Kimball,* 129 *Ga.* 49 (58 S. E. 640). The requirement of the law is that when the ordinary and the clerk are the same person, it shall be so stated in the certificate. It is not also required that there shall be a direct additional statement that the ordinary has no clerk. In the present case the ordinary described himself in the certificate as ordinary and ex-officio clerk of the court of ordinary, and likewise signed the certificate as ordinary and ex-officio clerk. It would have been useless to add to the description of his official position as ordinary that he was also ex-officio clerk, except for the purpose of indicating that the ordinary and clerk were the same person; and, fairly construed, such is the meaning which should be given to the certificate.

2. It has been settled by the decision of this court on the former consideration of this case (123 *Ga.* 336), that where several executors of a will have qualified, the joint act of all of them is necessary to execute a special trust created by the will; that the power to sell the wild land conferred by the will of Davison on his executors, at their discretion and that of the ordinary of the

county, was such a trust; and that the deed of Davant, executor, alone was not a valid execution of such trust. On the second trial it was sought to avoid this ruling by showing that the other two executors did not give attention to the business of the estate, but left it to Davant, who was the managing executor. This was not sufficient to cure the trouble. It was the testator who created the special trust and empowered his three executors jointly to execute it. The law required all to join in so doing. Civil Code, § 3317. The executors could not change the law and the will by letting some of them take no part in discharging their functions and leaving another to do so alone. Treating the deed as one by Davant in his official capacity as executor, it was properly rejected from evidence, as were also the depositions by which it was sought to avoid the effect of the former decision of this court.

In the brief of counsel for plaintiff in error it was argued that if the evidence rejected had been admitted, it would have shown a prescriptive title. Apparently, from the recitals of the bill of exceptions, the deed from Davant, executor, to Norman and that from Norman to Weeks were offered as muniments of title, and not as color of title. In connection with the former deed there is no suggestion in the bill of exceptions on the subject of prescription or color of title, even in the assignment of error. In regard to the latter the only mention of that subject is in the assignment of error where it is said that "Said deed would, at least, have been good as color of title." But it is not stated that it was so offered, or that the court's attention was called to the fact that reliance was sought to be placed upon it as such. One can not tender a deed as a muniment of title, offering it as conveying actual title, invoke a ruling on that subject, have it rejected as being invalid as a conveyance of title, say nothing to the court as to an offer of it as color of title in connection with other evidence to be thereafter tendered, and later obtain a reversal on the ground that it might have been admissible for the latter purpose. The burden of showing that the court erred in the ruling which he made rests upon the plaintiff in error who seeks a reversal. The presumption is in favor of the court, not of the plaintiff in error. When a paper is offered as a deed, the primary and natural understanding, in the absence of anything to the contrary, would be that it was offered as a conveyance. If objection is made to it

on the ground that it was made an executor without authority, or that no title was shown in the grantor, and no other purpose in offering it except to convey title is disclosed, the court would most naturally conclude that the deed was relied on as title. To allow him to rule on it as such, without having his attention called to any other purpose for which it might be admissible, and then reverse him because it was admissible for some other purpose, might often have the effect to entrap the court. A deed might perhaps be admissible on a question of handwriting, or as containing an admission, or for other purposes; but would it be right to the judge to offer it as a deed conveying title, let it be ruled on with respect to its validity as a conveyance, and reverse his ruling because the paper might have been admissible for some other purpose not shown to have been disclosed? Here, it seems that the mind of the judge was directed to the deeds as conveyances of title. As to the first deed excluded, additional evidence was offered with it for the purpose of supporting its validity as such. This having been ruled out, and no title being shown in the grantee therein, the deed from him was ruled out on that ground, —counsel and the court thus apparently dealing with the deeds as conveyances of title. The defendant did say in his plea that he and those under whom he claimed had been in possession under color of title; but this was not a good plea of prescription, nor did it show a length of possession sufficient for that purpose. Adverse possession was also urged for the purpose of attacking the conveyance from Davison, administrator, to Haden, as having been made pending such possession. There was no reference in the plea to the deeds now being considered; and it was not enough to render their exclusion, under the circumstances above stated, erroneous. At first blush it might appear that the ruling of this court to the effect that, where evidence was admissible for any purpose, admitting it over a particular objection would not be reversed, was not in perfect harmony with what is here said. But a careful consideration will show that the two rulings are based on the same principle, namely, that the burden of showing that the court committed error rests upon the plaintiff in error. There are intimations along the line here followed, in some of the cases in this State. See *Clark* v. *Hulsey,* 54 *Ga.* 608 (1); *Barker* v *Blount,* 63 *Ga.* 423 (1). The decision in *Simmons* v. *Lane,* 25

*Ga.* 178, was based on the act of 1802, which is not now embodied in the code.    In the earlier case of *Hester* v. *Young,* 2 *Ga.* 31, that act was considered, not as working a radical change in the law, but practically as declaratory of it as it previously stood.

The principle above announced has been ·recognized by the courts of a number of States.    Barksdale *v.* Toomer, 2 Bailey (S. C.), 108; Main *v.* Gordon, 12 Ark. 651; Jones *v.* Ry., 53 Ark. 27 (13 S. E. 416, 22 Am. St. R. 175) ; Jones *v.* State, 79 Tenn. (11 Lea) 468; Wheeler *v.* Rice, 8 Cush. 205; Young *v.* Otto, 57 Minn. 307 (59 N. W. 199) ; Maxwell Land Grant Co. *v.* Dawson, 7 N. M. 133 (34 Pac. 191).

3.    With the deeds from Davant, executor, to Norman, and from Norman to Weeks, properly rejected, there was no error in later rejecting the turpentine lease from Weeks to Horne.    The latter was not prescribing or seeking to prescribe.    The only use of the lease, if introduced, would have been to show that Horne was holding under Weeks, and that his possession would inure to the benefit of Weeks.    But the timber lease, as a paper, added nothing to the title of the latter.    From the standpoint of prescription, the lease and the evidence touching possession would at most have shown that Weeks was in possession through himself or his lessee from 1895 to the time of the bringing of the suit in 1904.    This was less than twenty years, and therefore did not give a prescriptive title by possession alone, and there was no color of title in Weeks in evidence.    He made out no prescriptive title.

4.    It was contended that if the evidence in regard to possession by Weeks and Horne had been admitted, it would have been shown that they were in possession at the time Davison, administrator, made his conveyance of the land to Haden, and therefore that such administrator's deed would have been invalid under the Civil Code, § 3457, which declares that "An administrator can not sell property held adversely to the estate by a third person; he must first recover possession."    This may be true, and we incline to think that the court should have admitted the evidence for that purpose.    But again it appears that if such evidence had been admitted, it could not have changed the result of the case, or prevented a verdict against the defendant.    If the deed from the administrator de bonis non to Haden was void, then what-

ever title the estate had at that time remained undivested. Subsequently the administrator de bonis non assented to the legacies in the will and conveyed the land to the legatees. Under the ruling in *French* v. *Baker & Hall, 95 Ga.* 715 (22 S. E. 652), such an assent to legacies and conveyance to legatees in settlement of the estate was not void, even if the land was held adversely. Afterwards the legatees conveyed to Haden, who had conveyed previously to the Hosch Lumber Company. So that, if the deed from the administrator to Haden were shown to be ineffectual, he would still have acquired the title of the legatees, and the same result of the suit would follow.

There was some discussion of the subject of laches and estoppel, but neither the pleadings nor the evidence made out any case which would have authorized a verdict in favor of the defendant on that ground.

*Judgment affirmed. All the Justices concur.*