ROUGHTON *et al. v.* ROUGHTON.

No. 9740.  FEBRUARY 14, 1934.

*Harris & McMaster,* for plaintiffs in error.

*M. L. Gross* and *W. M. Goodwin,* contra.

BELL, J.  An execution held by an alleged transferee was levied on real estate, and a claim was filed by the heirs of the deceased defendant in fi. fa.  The land consisted of 304 acres in Washington County, divided by a public road running east and west.  On the trial the court directed a verdict against the claimants as to the portion of the land lying south of the road, but submitted to the jury the question whether the portion lying north of the road was subject to the fi. fa.  The finding of the jury was in like manner against the claimants.  Their motion for a new trial was overruled, and they excepted.  In the motion error was assigned on the direction of the verdict in part, on the admission of evidence over objection, on extracts from the charge of the court, and on an omission to charge.

■ The execution was against George W. Roughton as sole defendant. The entry of levy described the lands by metes and bounds, and concluded with the following language: "and being the property of G. W. Roughton as of record of clerk's office. Homestead Book, page 294." When the entry of levy was tendered in evidence, the claimants objected to its admission, on the ground that the words just quoted were merely descriptive of the property, and that the entry "did not designate that the land was levied on as the property of George W. Roughton, and did in no way designate the interest of George W. Roughton therein." The court did not err in overruling this objection. Whether or not the entry was subject to the criticism lodged against it, the claim as filed by the objecting parties recited that the land "was levied on . . as the property of the defendant, George W. Roughton," and this admission was sufficient to estop the claimants from attacking the entry upon the ground stated. Where there is but one defendant in execution. and the claim affidavit recognizes that the land was levied on as the property of such defendant, the claimant can not object to the levy on the ground that it fails to show the amount of the defendant's interest in the property. *Scolly* v. *Butler,* 59 *Ga.* 849 (2). The rule is otherwise in cases where there are two or more defendants in fi. fa. *Hudspeth* v. *Scarborough,* 69 *Ga.* 776 (3) ; *Cooper* v. *Yearwood,* 119 *Ga.* 44 (45 S. E. 716).

■ The execution was in favor of Mrs. Sarah Roughton, executrix of the estate of Z. H. Roughton; and according to the will of Z. H. Roughton, which was introduced in evidence, the title to the execution passed to his children upon the death of their mother. B. E. Roughton, who is now prosecuting the execution as an alleged transferee, introduced in evidence what he claimed was a copy of a transfer made to him by the children of Z. H. Roughton after the death of their mother, loss of the original having been shown. The claimants objected to the introduction of the copy, upon the grounds (1) that there was no proof of the execution of a genuine original, and (2) that the copy of the alleged transfer related on its face to an entirely different execution from that under which the levy was made, and thus did not tend to show a transfer of the particular execution in controversy. There was no merit in these objections. The execution in question was issued from the superior court of Washington County on June 20, 1879, and was in the sum of

370

$328.78 principal, and the further sum of $16.65 as costs. It did not show the term of the court at which the judgment was rendered, but commanded the levying officer to make return "on the first Monday in September next." The copy of the alleged transfer purported to assign a "fi. fa. issued from Washington superior court, September term, 1897, for $328.78 principal, and $16.65 cost." The copy bore date of December 6, 1897, and appeared to have been recorded January 10, 1898.

M. L. Gross, an attorney, sworn for the plaintiff, testified as follows: "I have examined the copy of this transfer from the heirs of Mr. Z. H. Roughton to Mr. B. E. Roughton. I had that transfer in my possession. I know of my own knowledge that there was such a genuine paper. There was such a paper. I don't know where it is now. I have been unable to find it. The last time we had this case it was in my possession, and it was lost, and I can not find it. As to who signed that, it was signed by the same parties whose names appear on this record here. I have made a search for that paper, and I am unable to find it. The language of that was the same as the language of this record here; it was the same thing. The date of it, December 6, 1892. To complete the record, I would say that this record of the transfer there is identical with the original, with the exception of that date. Of course that date was absolutely wrong. I had the original and compared it with the transfer entered on the record, and saw it was the same transfer and purported to be a correct copy; that date was just an error in transcribing. As to what was my recollection of the date of the transfer that I had, I could not tell you by that; but I will say this, that I compared the transfer that I held, the original transfer, with the record; of course I overlooked the fact that the date was erroneous, but otherwise it was identical. As to the transfer that I had, I can not give the date of that transfer without the record. I could not give the date of that transfer of my own knowledge." B. E. Roughton, who claimed as transferee, testified as follows: "This is the fi. fa. that I purchased, and that fi. fa. was transferred to me. I have examined the transfer as entered on here, and this transfer has reference to the fi. fa. that I hold in my hand. That is the transfer of that fi. fa. All of the heirs at law signed that transfer."

From the testimony of these two witnesses it is apparent that an original transfer duly executed by the children of Z. H. Roughton

was at one time in existence. The testimony of B. E. Roughton, to the effect that "all of the heirs at law signed that transfer," was presumptively based on his own personal knowledge, nothing to the contrary appearing (*Shaw* v. *Jones,* 133 *Ga.* 446 (3), 66 S. E. 240) ; and it was further shown by the evidence of this witness that the transfer had reference to the execution under which the levy was made. While the copy indicates the assignment of a fi. fa. issued from Washington superior court, September term, 1897, the language of the original in relation to the term could by inadvertence have had reference to the term to which the fi. fa. was made returnable ; nor, in view of the oral testimony, is it unreasonable to infer that the figures "1897" appearing in the copy contained a mere clerical error whereby the relative positions of the 9 and 7 were reversed, and that a transfer of the execution issued in 1879 was the thing actually undertaken by the parties. B. E. Roughton also testified that the execution was transferred to him in 1892, which accorded with the testimony of M. L. Gross as to date. Although the copy introduced in evidence indicates that the original transfer was signed in 1897, this discrepancy could have resulted from using the figure "7" instead of the somewhat similar figure "2" in recording the instrument. Aside from these irregularities there is much in the transfer to show its intended relation to the execution under consideration. The parties and the court were identically stated, as were also the amounts recovered for principal and costs respectively. The execution discloses on its face that it was based upon a judgment for mesne profits in a suit in ejectment; and it is well-nigh inconceivable that the same plaintiff should ever have recovered of the same defendant in the same court another judgment for the same amount as principal with the same charges for costs. In view of these circumstances, together with the undisputed testimony of the witnesses Gross and B. E. Roughton in regard to the transfer, it appeared as a matter of law that a genuine transfer was duly executed, and that it related to the fi. fa. involved in the case on trial. See, in this connection, *Baldwin Fertilizer Co.* v. *Merritt,* 101 *Ga.* 387 (29 S. E. 18) ; *Robinson* v. *Yarbrough,* 44 *Ga. App.* 648 (162 S. E. 629).

The copy of the alleged transfer could have been legally admitted in evidence if the circumstances had only authorized these inferences; but since there is an exception to the direction of a verdict,

we have deemed it proper to determine whether such inferences were demanded, it being the opinion of this court, as will be shown presently, that the trial judge did not otherwise commit error in directing the verdict. The execution was kept in life by successive entries of nulla bona duly recorded, and there is no question as to the validity of the fi. fa. or as to its continued existence as an active lien.

■ The evidence showed, without dispute, that prior to the year 1860 the land in controversy was the property of Enoch Roughton, the father of George W. Roughton, who was the defendant in fi. fa., and that during or about that year George W. Roughton was in possession of the property as apparent owner. He continued in such possession until the date of his death about 1892. No muniments of title were introduced to show the origin of his possession, it appearing from the evidence that the records of the county were "burned by the Yankees." The evidence as to possession came from witnesses who were advanced in age and testified from personal recollection. Their testimony was not contradicted with respect to any matter. Upon the evidence as thus stated, there was a presumption of absolute ownership in George W. Roughton; and in the absence of anything to the contrary, a prima facie case in favor of the plaintiff in fi. fa., or the transferee thereof, was fully established.

Where property is levied on under execution and claimed by a third party, the statute imposes the burden of proof on the plaintiff in fi. fa. in all cases where the property levied on is, at the time of such levy, not in possession of the defendant in execution. Civil Code (1910), § 5170. One of the ways in which the onus may be carried is to show possession in the defendant in fi. fa. after the rendition of the judgment. Such proof will raise a presumption of title in the defendant and require a finding in favor of the plaintiff in fi. fa., in the absence of rebutting evidence. *Coleman* v. *Rice,* 105 *Ga.* 163 (31 S. E. 424). See also *Peters* v. *West,* 70 *Ga.* 343 (3); *Findley* v. *Johnson,* 84 *Ga.* 69 (3) (10 S. E. 594); Civil Code (1910), §§ 4471, 5586. But the court allowed B. E. Roughton, the transferee of the execution, to testify, over objection, that Enoch Roughton put his son George W. Roughton, the defendant in fi. fa., in possession "about 70 years ago," and that the land was a gift from the father to the son. This evidence was objected to on the ground that it was hearsay, the witness having testified that he

had never had any conversation with Enoch Roughton with reference to a gift of this property to his son George W. Roughton. Whether or not the admission of this evidence was erroneous, it was not cause for a new trial. The evidence was a mere attempt to *corroborate* possession as proof of title; and whether true or false, it did not change the prima facie case of title as otherwise established. In other words, if there was nothing to rebut the inference of title arising from possession, a verdict against the claimants was demanded, and therefore the claimants were not hurt by anything *additional*, even though in the form of illegal testimony.

■ The claimants introduced in evidence a deed from A. L. Roughton to George W. Roughton as "trustee for his children," purporting to have been executed on July 7, 1868, and recorded August 12, 1881. The claimants contended that this deed was a conveyance of a portion of the land situated north of the public road. It did not affect the land south of the road, and there was some evidence which tended to show that it did not cover the land north of the road. For the purpose of this case, however, we may assume that the land described in this deed was the same as that situated north of the public road. E. F. Roughton, one of the claimants, and the only one of them who appeared as a witness, testified, "I don't know anything about that deed." There was no evidence that the grantor, A. L. Roughton, was at any time in possession of the property, or that the grantee, George W. Roughton, ever claimed possession under this deed. So far as appears, there was no change in the character or basis of the grantee's possession after the execution of this instrument.

The transferee of the execution introduced in evidence a homestead applied for and obtained by George W. Roughton in the year 1879; and in the motion for a new trial it is recited that all parties to the case admitted "that the tract on the north side of the public highway as well as the tract on the south side thereof was included in the homestead, and upon this there was no issue." The widow of George W. Roughton died a year or two before the levy of the execution, and all of the other beneficiaries of the homestead had attained their majority long before the death of their mother. E. F. Roughton further testified as follows: "I live on that tract of land at the present time. . . As to who has been in possession of that property since my father's death up until the present time,

well, the children have been in possession of it up until the present time. Some of them have been living on it the biggest part of the time. Mrs. Roughton was in possession of it a portion of the time. We children, after my father died, agreed to let her stay on there and try to help make her a support off of the place. She was not claiming any title to it or any right in it. She was [not?] claiming any title to it by any right of possession from any homestead or otherwise, that I know of. As to under whom and by whose permission during the time she occupied it she did hold it, well, we children turned it over to her after my father died, to help her so that she could make her a support on it and a living. She was holding possession under and by permission of the heirs of George W. Roughton. If she was holding it under a homestead, I don't know it. I don't know exactly how long she was in possession of it, but I reckon something like about 20 years. She has been off of the tract of land, I don't know exactly, some 12 or 15 years. Since my father's death the heirs of my father, together with her possession, which was permissive, have been in open, adverse, and exclusive possession of that property for that period of time since then. When my father died and the heirs went into possession of this property and claimed title thereto, we went into possession and claimed title by reason of the statements made to me by my father, that the property belonged to us and that he never held it other than as trustee. That was the beginning of the possession of the children, and that possession has continued on down to the present time, and I was in possession at the time of the levy. That possession has been open and notorious; I have been on there all the time; it has been evidenced by occupancy, cultivation, and enclosure. I have been there all the time. Upon the death of my father, there was no administration on his estate or anything of that kind. These claimants named here are his heirs at law, and all of his heirs at law. . . My father never did tell me from what source he got the tract above or north of the Sandersville public highway. . . As to . what I recall about the circumstances of his having it set aside and turning the property over to the children, or to my mother—he never set it aside to her that I know of. I heard that it was set aside for a homestead, but I don't recollect the time. I don't know exactly whether it was soon after it occurred before I heard of it or not. I was some fifteen or sixteen years old, I reckon, the best I recollect, at the time I heard of it."

It was contended by the claimants that they did not hold the land as beneficiaries under the homestead, but that as to the entire tract they had acquired prescriptive title in virtue of more than 20 years of adverse possession, and that in addition to this they established title by holding in good faith under the deed from A. L. Roughton as color of title for more than seven years.

The above is a resumé of the material evidence and the contentions of the parties with regard to title; and it is our opinion that the verdict against the claimants, finding *all* of the property subject, was demanded by the evidence as a matter of law. In this view, any errors in the charge of the court or in the omission to charge were harmless and immaterial. Accordingly, we will not discuss the assignments of error based upon these grounds. Only a few conclusions of law need be stated in this connection. As indicated above, there was no evidence that A. L. Roughton was at any time in possession of the land described in his deed to George W. Roughton as trustee. "A deed from one who is apparently a stranger to the paramount title, and who is not shown to have ever been in possession of the premises conveyed, is insufficient to make out a prime facie case showing title in the grantee." *Bleckley* v. *White,* 98 *Ga.* 594 (3) (25 S. E. 592). See also *Parker* v. *Waycross & Florida R. Co.,* 81 *Ga.* 387 (2 *c*) (8 S. E. 871) ; *Delay* v. *Felton,* 133 *Ga.* 15 (3) (65 S. E. 122) ; *Nesmith* v. *Hand,* 128 *Ga.* 508 (57 S. E. 763). Nor could the deed here referred to be considered as a foundation of prescription under color of title, it not appearing that there was any possession under it. In order that prescription may ripen under color of title, "there must not only be color of title but possession under it." *Turner* v. *Neisler,* 141 *Ga.* 27 (7) (80 S. E. 461) ; *Walker* v. *Hughes,* 90 *Ga.* 52 (15 S. E. 912) ; *Lee* v. *O'Quin,* 103 *Ga.* 355 (3), 364 (30 S. E. 356) ; *Weeks* v. *Hosch Lumber Co.,* 133 *Ga.* 472 (2 *b*) (66 S. E. 168, 134 Am. St. R. 213). Since it does not appear that the deed from A. L. Roughton conveyed any title or right of possession, there is no presumption that the grantee who was already in possession as apparent owner ever shifted to that instrument as the basis of his possession; and if the claimants could in any event have prevailed by submitting affirmative evidence upon that question, they undoubtedly had the burden of doing so. *Harris* v. *McDonald,* 152 *Ga.* 18 (3) (108 S. E. 448) ; *Anderson* v. *Blythe,* 54 *Ga.* 507, 508; *Hill* v. *Waldrop,* 57

*Ga.* 134; *Harris* v. *Cole,* 114 *Ga.* 295 (3) (40 S. E. 271); *Rucker* v. *Rucker,* 136 *Ga.* 830 (2) (72 S. E. 241); 2 C. J. 264, § 587. If in any case the mere occupancy of land with a deed from a stranger could be considered as presumptive evidence that the occupant was claiming under such deed as color of title (see Powell on Actions for Land, §§ 293, 403; *Norris* v. *Dunn,* 70 *Ga.* 796, 800), there could be no evidence of this character where, upon a balancing of the circumstances, the occupancy points with equal if not greater force to some other claim.

In considering whether the evidence showed possession under the deed from A. L. Roughton, we do not overlook the testimony of E. F. Roughton that he and the other claimants "went in possession and claimed title by reason of the statements" made by their father, to the effect that the property belonged to them, and that "he never held it other than as trustee." In several decisions by this court it has been said that a "homestead is in the nature of a trust estate." *Wilder* v. *Frederick,* 67 *Ga.* 669 (2); *Willingham* v. *Maynard,* 59 *Ga.* 330; *Hodges* v. *Hightower,* 68 *Ga.* 281; *Wilson* v. *Rogers,* 68 *Ga.* 549; *Daniel* v. *Bush,* 80 *Ga.* 218 (4 S. E. 271). Bare possession of real estate by the applicant is a sufficient basis for the grant of a homestead. *Mozley* v. *Fontana,* 124 *Ga.* 376 (52 S. E. 443). Where a homestead is applied for and obtained by a husband and father as the head of a family, subsequent possession by the family is presumptively his possession. *Broome* v. *Davis,* 87 *Ga.* 584 (2) (13 S. E. 749). There was no direct evidence as to the circumstances under which the father of the witness made the statements referred to, or as to the time of their utterance. The witness was 15 or 16 years of age at the time the homestead was granted, and under all the evidence it is necessarily to be inferred that the statements under consideration postdated that incumbrance. It being undisputed that the father was in possession of the property several years before the execution of the deed by A. L. Roughton, and that this deed did not purport to cover the entire tract, the alleged statements of the father that he *never* held the property other than as trustee could not have referred to that instrument. Furthermore, if this deed had been considered by the grantee as conveying the title to any part of the property to him as trustee, it is improbable that he would have alleged title in himself as to that portion in his subsequent application for a homestead, or that he would have sought a

homestead in such property, there being no necessity for such action in order to stay liens against himself. In the circumstances, the phrase "never held" as used by the witness in the indirect quotation should be taken merely as the words of the witness in relating his father's statement and construed in the sense of "did not hold," the language being ambiguous, and the witness being a party whose testimony is to be construed most strongly against him. Thus interpreted, the evidence would show that according to the declarations the declarant did not, at the time of speaking, hold the property othewise than as trustee. Any other interpretation would show the statements to be contradictory of the facts, whereas they should be construed consistently therewith if it is reasonably and fairly possible to do so. The statements in question could not have been true as to all the land unless made after the grant of the homestead and in reference to it, and they must be so understood from this record. They would not have been admissible at all except as they related to possession held at the time of their utterance, since declarations as to the character of one's possession are admissible only as a part of the res gestæ, and not admissible "when they constitute a narrative or a statement of a past transaction." *Carrol* v. *Gillion,* 33 *Ga.* 539. The inevitable conclusion is that the statements claimed to have been made by the father related only to the homestead, and not to the deed from A. L. Roughton wherein he was designated as trustee. Accordingly, the claimants did not show that any possession was ever based upon that deed, and that the deed therefore is an irrelevant and immaterial fact in the record.

The evidence as a whole demanded the inference that George W. Roughton was the owner of the legal title subject only to the homestead incumbrance after this exemption was obtained, and that the claimants had no title or right of possession except by inheritance from him. No adverse possession in favor of the head of the family or the beneficiaries could arise against a creditor pending the existence of the homestead. *Carrie* v. *Carnes,* 145 *Ga.* 184 (88 S. E. 949). The homestead was not terminated until the death of the wife and the arrival at majority of the other beneficiaries, but upon the happening of these events the land was subject to levy at the instance of a creditor holding a valid lien against the owner in whose name the homestead was obtained. *Virden* v. *Garland,* 147 *Ga.* 14 (2) (92 S. E. 647); *Dudley* v. *Griggs,* 150 *Ga.* 153 (103

S. E. 89); *Donalson* v. *Yeates,* 173 *Ga.* 30 (6) (159 S. E. 856). Under the law and the properly admitted evidence, the trial could have had no other legal result except the verdict as returned by the jury, although it was in part directed by the trial judge. The court did not err in refusing a new trial.

Aside from the legal questions, the record in the instant case would seem to justify the following comment: The execution was issued nearly 55 years ago. Throughout this period it has been nurtured and kept in life to abide the termination of the homestead. Interesting is the fact that it was issued in the name of the Honorable Herschel V. Johnson, who served as judge of the superior court of the Middle Circuit, after his distinguished record in the offices of Governor, United States Senator, and other high positions. Upon the back of the execution is a receipt for a small payment, dated July 2, 1879, and signed by James K. Hines, attorney, who afterwards became solicitor-general and judge respectively of the same circuit, and was lately a most learned member of this court. During the long years that have passed interest has steadily accumulated at the legal rate, while the transferee has waited patiently or impatiently to collect the debt. The law of compensation has worked with the other laws. The exemption has now fully served its purpose as a homestead for the wife and children, and the execution with augmented demand is set free as a lien upon the property. With its other remarkable features, the case is impressive as a lesson of diligence and punctuality. The aged transferee has not overslept his rights; and finally, it seems, persistence and vigilance are about to be rewarded. Vigilantibus, non dormientibus, jura subveniunt.

*Judgment affirmed. All the Justices concur, except*

RUSSELL, C. J., and ATKINSON, J., who dissent from the rulings in the 4th, 5th, 6th, and 7th divisions of the opinion, on the ground that the principles referred to are inapplicable under the facts of this case.