21346.   DANIEL, Administrator v. WEEKS.

ARGUED SEPTEMBER 11, 1961—DECIDED OCTOBER 24, 1961.

396

*G. H. Mingledorff*, for plaintiff in error.
*Arthur C. Farrar, J. W. Waldroup*, contra.

QUILLIAN, Justice. ■ A motion for a judgment notwithstanding the verdict may be granted only when a valid motion for a directed verdict has been made by the movant and erroneously denied. *Code Ann.* § 110-113 (Ga. L. 1953, pp. 440, 444; Ga. L. 1957, pp. 224, 236). A motion for a directed verdict is in order only where there is no conflict in the evidence and a verdict in the movant's favor is demanded. *Code* § 110-104.

■ The defendant's motion for a judgment notwithstanding the verdict sets forth ten reasons, lettered (a) through (j), why his previous motion for a directed verdict should have been granted. The first four of these reasons assert that the petition did not allege, and the evidence did not show, the value of the services rendered by the plaintiff and the value of the property

Mr. Pegram was to devise to her by his will. These reasons are not in accord with the record, from which it clearly appears that the petition alleged, and the evidence submitted upon the trial showed, the relative value of the plaintiff's services and the property she contended Mr. Pegram was to devise to her.

■ The fifth reason, lettered (e), reads: "The evidence on the trial of the case does not show beyond a reasonable doubt that the alleged contract between the plaintiff and G. H. Pegram as alleged in the petition was made."

The plaintiff proved in positive, consistent, and clear language the fact of the contract and the circumstances under which it was made in minute detail, and with equal clarity and consistency showed the exact terms of the contract. The plaintiff's evidence as to this feature of the case was plain, plausible, and uncontradicted, and considered in the light of reason was sufficient to prove the contract beyond a reasonable doubt. It measured up to the standard set in the factually similar cases of *Whitehead v. Dillard*, 178 Ga. 714 (174 SE 244), and *Matthews v. Blanos*, 201 Ga. 549 (40 SE2d 715).

■ The sixth reason, lettered (f), is: "The undisputed evidence on the trial of the case proved conclusively that if the alleged contract was made it was breached, not by G. H. Pegram, but by the plaintiff herself when she refused to attend and care for G. H. Pegram as long as he lived and thereby necessitated his removal to the State of North Carolina nearly two months before his death."

This contention is based upon the testimony of two witnesses of the defendant, Mrs. Daniel and Mrs. Nicholson, nieces and heirs at law of Mr. Pegram, that the plaintiff stated to them that she would no longer care for Mr. Pegram in the event he returned to his home, and that Mrs. Daniel was accordingly obliged to carry him to her home in North Carolina where, within two months, he died. Mrs. Daniel also related that she received a letter from the plaintiff reaffirming her refusal to continue to care for Mr. Pegram. The letter was not produced, and Mrs. Daniel was uncertain as to whether she had left it in her home. Mr. Weeks, the plaintiff's husband, testifying in her behalf, denied that his wife had made the statements attributed to her, or had

written the letter in question, or that it was necessary for Mrs. Daniel to carry Mr. Pegram to North Carolina.

His testimony was. "The only reason I know as to why Mr. Pegram went back to North Carolina just prior to his death and before he was able to be dismissed from the hospital was because they took him anyway. He was being well cared for in the Douglas-Coffee County Hospital. He never expressed any desire to me that he wanted to go. He was unconscious just a day or two before they took him away. He was very sick and unconscious most of the time. It was not necessary for them to take him then. My wife never told Mrs. Nicholson, Mrs. Daniel or any person that she would not care for Mr. Pegram, but insisted, at all times, that she would care for him as long as he lived. My wife never wrote any letter to any person stating that she would not look after Mr. Pegram. She never stated to anyone that she would move if Mr. Pegram came back to live in the home in Douglas, Georgia."

Contrary to the defendant's contention, there is nothing in the evidence to indicate that the witness did not have personal knowledge of the facts to which he testified. In slightly different forms, it is held in *Shaw v. Jones, Newton & Co.*, 133 Ga. 446 (3) (66 SE 240); *Roughton v. Roughton,* 178 Ga. 367, 371 (173 SE 673); and *Metropolitan Discount Co. v. Wardlaw,* 37 Ga. App. 423 (140 SE 525): "Where a witness testifies to a fact, the presumption is, in the absence of anything to the contrary, that he is testifying from his own knowledge."

Thus, it clearly appears on the issues raised by the testimony of Mrs. Daniel and Mrs. Nicholson that there was a material conflict. Hence, their evidence did not demand a verdict in favor of the defendant.

■ Reasons 7 and 8, lettered as (g) and (h), simply undertake to suggest that the plaintiff made vague statements inconsistent with her claim of title to the property described in the petition. Considered in the most favorable light, these grounds show no more than that the defendant's evidence made an issue of fact for solution by the jury.

■ The ninth and tenth reasons, lettered (i) and (j), amount to no more than a general contention that the evidence demanded a verdict for the defendant.

According to the pronouncements of this court in *Bowles v. White*, 206 Ga. 433, 437 (57 SE2d 547); *Mann v. Moseley*, 208 Ga. 420 (67 SE2d 128); *Shaw v. Miller*, 215 Ga. 413 (110 SE2d 759), and *Allen v. Bobo*, 215 Ga. 707 (113 SE2d 138), the evidence, although as to some facets of the case in conflict, amply authorized the verdict in the plaintiff's favor.

*Judgment affirmed.   All the Justices concur.*