23194. ABDILL v. BARDEN et al.

ARGUED NOVEMBER 8, 1965—DECIDED DECEMBER 9, 1965.

*Ben B. Ross, Wilbur A. Orr,* for appellant.
*Randall Evans, Jr.,* for appellees.

GRICE, Justice. A suit for specific performance of an oral contract to devise real estate produced the rulings which require review here. The suit was instituted in the Superior Court of

Lincoln County by Betty Sirman Barden and her husband, Harris Edward Barden, against Mrs. Irma Abdill, the daughter and sole heir of Harvey E. Dyer, who died intestate. The petition alleged that the plaintiffs and the intestate entered into a contract whereby the plaintiffs were to render certain services to the intestate for the remainder of his life, in return for which the intestate was to devise to them described real estate. It further alleged their performance of their obligation and the failure of the intestate to devise. The defendant's answer denied the material allegations of the petition.

The trial resulted in a verdict and judgment awarding the property in question to the plaintiffs. The defendant moved for judgment notwithstanding such verdict, and also for a new trial. Both motions were denied.

Enumerated as error are the denial of those motions, the admission in evidence of testimony of the two plaintiffs as to alleged transactions and conversations with the intestate, denial of a motion for continuance, and failure to charge a principle relating to specific performance.

■ The defendant complains of the allowance in evidence of specified testimony given by each of the plaintiffs as to transactions and communications with the intestate relating to their alleged contract. The defendant contends that, since she is the daughter and sole heir at law of the intestate, this is a suit against the personal representative of a deceased person and, therefore, is governed by *Code* § 38-1603 (1). That section provides, in material part, that "Where any suit shall be instituted or defended by . . . the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the . . . deceased person as to transactions or communications with such . . . deceased person. . ." In this connection, the defendant points out that at the time the suit was filed she had applied to the court of ordinary for an order declaring that no administration upon her father's estate was necessary.

The position taken in these two grounds of her enumeration is not meritorious.

While the defendant is the sole heir of the intestate, she is not

his personal representative. She is not the surviving husband or wife, who upon payment of debts may take possession of the estate without administration by virtue of *Code* § 113-902 or § 113-903 (1). This distinction is decisive as to whether she may invoke the rule of *Code* § 38-1603 (1), supra. See *Neely v. Carter,* 96 Ga. 197, 204 (23 SE 313); *Boynton v. Reese,* 112 Ga. 354 (3) (37 SE 437); *Rudulph v. Washington,* 146 Ga. 605 (1) (91 SE 560) (one Justice absent); *Lifsey v. Mims,* 193 Ga. 780 (2) (20 SE2d 32). The cases relied upon by the defendant are thus distinguishable.

■ Appellant also avers that the court erred in denying the defendant's motion for a continuance based upon surprise resulting from an amendment to the plaintiffs' petition as to the value of the property sought and of the services rendered pursuant to the alleged contract. But the defendant, insofar as this record discloses, did not then state to the court that such continuance was "not claimed for the purpose of delay," as is required by *Code* § 81-1409.

In *Gregory v. Ross,* 214 Ga. 306 (1), 308 (104 SE2d 452), this court called attention to this mandate, declaring that "The Code does not leave this matter to inference; there must be an express statement to the effect that delay is not the purpose of the application; and, in the absence of such express statement, a judgment refusing to continue the case will not be reversed." Here, the motion for continuance contained nothing whatever as to this feature.

Accordingly, the denial of the motion for continuance was not erroneous.

■ It is also asserted that the court erred in failing to charge that "Specific performance is not an absolute right and that in cases within suit [sic] is brought to require specific performance of an oral contract to convey certain real property, it must appear from the evidence the value of the services rendered and the value of the property sought to be recovered are such that it would not make it unfair, unjust or against good conscience to afford the relief sought and vest the title to the property in the plaintiffs." No request for such charge was made.

The defendant contends that the failure to so charge con-

■

fused the jury by causing it to appear to them that specific performance was the only possible verdict if they found for the plaintiffs, and that a money verdict for damages for breach of contract was not authorized; that they were not authorized to consider testimony as to the values of the services and the property and thus whether or not the granting of specific performance might be unfair, unjust or against good conscience; and that the plaintiffs were relieved of the burden of showing that the value of the property did not exceed the value of the services rendered so that specific performance would not be unfair, unjust and against good conscience.

This contention is not maintainable.

It is not insisted that the court should have charged *Code* § 37-805, which provides that specific performance may be refused because of mere inadequacy of price or "any other fact showing the contract to be unfair, or unjust, or against good conscience."

Instead, it is urged that the jury should have been instructed substantially in accordance with what this court has said in applying that Codal provision where there is an oral promise to devise in return for services rendered, namely, that specific performance is not an absolute right, and that in such a situation the values of the services and property must not be such as to make it inequitable to grant that relief and vest title in the plaintiffs. *Bullard v. Bullard,* 202 Ga. 769 (1) (44 SE2d 770). See also, *Shropshire v. Rainey,* 150 Ga. 566 (104 SE 414) (one Justice dissenting).

Without a request therefor, it was not error to fail to give this charge.

■ We come now to a consideration of the evidence in the light of the denial of the general grounds of the defendant's motion for new trial and of her motion for judgment notwithstanding the verdict. She acknowledges that the evidence shows that services were rendered by the plaintiffs to the intestate but insists that it does not show the making of the contract relied upon by the plaintiffs.

In evaluating the evidence, we are mindful of the well established rule applicable to specific performance of an oral contract

to devise property: ". . . the *existence* of the particular contract must be made out so clearly, strongly, and satisfactorily as to leave no reasonable doubt." (Emphasis ours.) *Brogdon v. Hogan,* 191 Ga. 647, 654 (13 SE2d 666), and citations.

The evidence here, as we measure it, meets the strict requirements of the rule just quoted. From the testimony of several witnesses, the contract was in essence that the intestate, in consideration of the Bardens' caring for his needs during the remainder of his life, would devise to them the house and lot in question. This testimony was, in our view, sufficiently clear, strong and satisfactory in essential features, as the following references demonstrate.

The plaintiff Harris Edward Barden testified: ". . . [the intestate] made me a contract with us, that if we would look after him the rest of his life—not to stay in the house with him and look after him the rest of his life—but if we needed to move back in the house with him move back in to stay with him ·. . . just oral contract . . . in July of '60. . . We were supposed to—just like you'd do at home. We were supposed to keep his house; cook for him; give him medicine; keep the house clean; yard clean; painted the house . . . [My wife] was suppose to cook . . . get anything he needed . . . He was to will us his house, with the land there . . . 3.7 acres. . . He asked us if we would stay there and look after him the rest of his life, that he would leave us his house and land. . . That was the agreement. . . [We said] that we would do it."

Mrs. Betty Sirman Barden, the other plaintiff, gave the following testimony: ". . . [The intestate] asked us about moving in with him before he came home from the hospital. . . Then later on when he came home from the hospital . . . in July of 1960. . . The agreement was for us to move in the house with him to look after him . . . we promised him to care for him until he died. . . He was to will us the property . . . the 3.7 acres. . . He said to us would we stay there and look after him and do the services that is suppose to be done around the house; that if we would, that he would will us his property; that what we were suppose to do

was stay there and look after him and cook and clean the house and just wait on him."

Mrs. Carolyn Poss testified: ". . . [The intestate] told me . . . when I get better I want to go to Ben Ross's office to make a will to leave Harris and Betty my place. He said I've made an agreement with them . . . to leave them his place. . . [His daughter] was to get the money and they were to get the place. . . [The Bardens] were supposed to wait on him."

Harold Sturkey's testimony was that the intestate told him: ". . . I intend to leave it [the place] to Harris and Betty . . . They've been very good to me; they've waited on me when I was sick."

L. W. Glidewell swore: ". . . The intestate [said that] Harris and Betty were staying there with him and taking care of him and told me he was going to leave them the place."

Roy Barden gave this testimony: ". . . [The intestate] said that [the Bardens] had waited on him and he was going to leave them that place. . . [As to whether I ever heard him make a statement as to any agreement between himself and the Bardens], I just heard him say he was going to leave them that place."

William Barden swore: ". . . [as to the agreement between the plaintiffs and the intestate] He said if they'd look after him and stay there whenever he was sick and wasn't able to go that he'd leave them the house and land."

Testimony given by several witnesses for the defendant was at variance with that recited above.

However, the fact that there are conflicts in the evidence does not prevent the establishment of a contract to devise. Unanimity of testimony can hardly be expected, much less required, in cases such as this. In the final analysis the diverse evidentiary proofs presented a question for the jury, under the stringent rule first above quoted. The jury chose to adopt the version of the testimony favorable to the plaintiffs' contentions.

The evidence here as to the existence of the contract compares favorably with that held sufficient in other cases for specific performance of a contract to devise property in return for

services rendered. See *Daniel v. Weeks,* 217 Ga. 388 (3) (122 SE2d 564); *Ray v. Sears,* 220 Ga. 521 (140 SE2d 194); and cases cited therein.

In addition to reviewing the evidence as to the existence of the contract itself, we have also reviewed that as to other essentials, including performance of that contract by the plaintiffs, and have found it ample.

Accordingly, the trial court properly denied the general grounds of the motion for new trial and the motion for judgment notwithstanding the verdict.

*Judgments affirmed. All the Justices concur, except Mobley, J., not participating for providential cause.*