POWELL *et ux.* *vs.* THE AUGUSTA AND SUMMERVILLE RAIL-
ROAD COMPANY, and *vice versa*.

1. Whether, on a new trial in a civil case, the jury shall be taken from the grand jury, or the traverse juries, or partly from each, is matter of discretion with the presiding judge. No abuse of the discretion appears in this case.

2. Prosecution for felony is not a condition precedent to the recovery of damages (actual or punitive) for a personal injury.

3. Where a cross-interrogatory, such as, " Are you not able to attend the court in person ?" is clearly answered in the affirmative by implication, the failure to answer expressly will not oblige the court to suppress or exclude the direct interrogatories and answers.

4. A female witness, though a party to the suit, and residing in the county, is not obliged, as a general rule, to attend court in order to testify.

5. Unless all the evidence of a witness is objectionable, the particular part which is objectionable should be specified in the motion for a new trial or in the bill of exceptions.

6. The witness being a matron forty years of age, such questions as, whether or not the plaintiff suffered an abortion? and whether or not flooding was caused thereby? are not so leading as to require the exclusion of the answers.

7. Medical evidence of the condition of the injured party after the suit was brought, as well as before, is admissible to show the nature and effects of the injury, and whether temporary or permanent.

8. If the injury resulted in abortion, evidence touching the consequences of abortion upon the mother's future health is evidence relating to the past injury, and not to future injuries.

9. A question put to a medical witness thus, "How would those troubles affect the nervous system?" does not inquire for dicta or opinions of the profession at large, but for the individual opinion of the physician under examination. And though not confined to the nervous system of this particular woman, the question is relevant as an inquiry concerning a pathological law to which her system as being that of a woman, is or may be subject.

10. Where there is evidence tending to show that the state of impaired health and diminished ability to labor, attributable to the injury, may endure through life, the mortuary tables are admissible in evidence to aid the jury in dealing with the element of time involved in their computation of the damages.

11. Though the plaintiff's father was present when she received the injury, his declarations, made several days afterwards, are not evidence for the defendant, even under the special circumstances of the present case.

12. Under the charge as given, it was not at all necessary to caution the jury against allowing damages for disappointed maternal hopes and anticipations.

13. As to the mere right of the plaintiff to recover, the verdict is not contrary to law to evidence, to the weight of evidence, or to the principles of equity and justice; to the extent of settling the right, the verdict should stand as final and conclusive.

14. Two verdicts, finding heavy damages for the alleged injury, having been rendered, the second for more than twice as much as the first, the wide difference between them in amount may, in the light of the whole case, justify the judicial mind in suspecting bias or prejudice, and the presiding judge having ordered a new trial because the second finding was excessive, and this court not being thoroughly convinced that there was error in so doing, affirms the judgment, with the qualification and direction that the plaintiff's rights to recover stand and remain established, and that

v 77 13

the new trial be had upon the question of amount, and that only. Let the damages be assessed again, as speedily as practicable, by another jury.

March 5, 1887.

Damages. Actions. Criminal Law. Interrogatories. Witness. Practice in Superior Court. Evidence. New Trial. Verdict. Practice in Supreme Court. Before Judge RONEY. Richmond Superior Court. April Term, 1886.

To the report contained in the decision, it is necessary to add only the following, which were, in substance, the grounds of the motion for a new trial:

(1.) Because the court overruled a motion to strike the plaintiffs' declaration on the ground that the allegations therein made a case of criminal negligence amounting to a felony, and contained no averment of any prosecution commenced previously or concurrently with the filing of the writ; and also because the court refused to charge the jury that aggravating circumstances cannot be found to exist unless such as would make the driver liable to conviction for criminal negligence; and that, unless such criminal negligence is prosecuted for before, or simultaneously with, the commencement of the suit, there can be no recovery by plaintiffs, unless the jury find such negligence was not a crime.

(2.) Because the court overruled the motion of the defendant, made before the empanelling of any jury, to have the case tried before a special jury, a new trial having been granted to the defendant May 2, 1885, the court stating, as to such motions, they were to be granted only in his discretion, and the only case where he had permitted it was where there had been a verdict of two juries, and a third trial was had.

(3.) Because the court overruled the objection of defendant's attorneys to the execution of the interrogatories taken out by the plaintiffs for the examination of Mrs.

Powell;—the ground of objection being that this plaintiff had failed to answer the first cross-interrogatory as to her physical ability to attend court. [The cross-interrogatory and answer were as follows: " Are you not able to attend the court in person, and is not your examination by interrogatories of your own seeking?." (A.) " The examination at my house is of my own seeking. I have never been in a court-house, and fear that I could not attend as a witness personally, as the surroundings would excite me so that I could not answer the questions which might be propounded to me, intelligently."]

(4.) Because the court admitted in evidence the answer of Mrs. Nathan Davis to the direct interrogatoy which had been objected to at the time the interrogatories were crossed and the same renewed when the testimony was offered. [The following were the 3d and 4th interrogatories objected to as leading: " What, if anything, happened to Mrs. Powell in the course of her illness? Did she, or not, suffer an abortion or miscarriage? If you answer that she did, state particularly what consequences, if any, followed said abortion or miscarriage.—State whether or not flooding, and to what extent, was caused by said abortion or miscarriage, and how long it continued, and its effect upon Mrs. Powell."]

(5.) Because the court allowed, over the objection of defendant's attorneys, the testimony of the witness, Dr. Baker, as to the condition of Mrs. Powell after the commencement of this suit, and particularly as set out in the brief of evidence.

(6.) Because the court refused to allow the introduction, in behalf of defendant, from E. G. Mosher, superintendent, the statements of Francis L. Dye, father of Mrs. Powell, who was shown by the testimony to have been present at the time of the alleged injury, and who was the first to report the circumstances thereof to this witness four days after the alleged occurrence.—The ground of objection, which was sustained by the court, was that the witness

was dead; while the defendant claimed the testimony to be admissible, in view of the testimony already in with reference to the interview had between Powell, the father of the husband, and Patrick Walsh, the president of the defendant, with the knowledge and sanction of the plaintiff and her husband, and also to rebut the presumption of negligence, and to show why no action was had with reference to the driver of the car on that occasion.

(7.) Because the court refused to charge the jury that injuries to the maternal hopes and anticipations from miscarriage of the plaintiff, cannot be considered by the jury in estimating damages.

(8), (9) and (10.) Because the verdict was contrary to certain specified charges of the court, and to the evidence and the principles of justice and equity.

(11.) Because the verdict was excessive.

(12.) Because the court overruled the objection to the testimony of Dr. Baker as to future injuries of Mrs. Powell, particularly as to the future consequences of miscarriage and abortion, and in allowing the question, "How would those troubles affect the nervous system; those troubles that grow out of a violent injury, causing abortion?" the answer being, "Those internal injuries to the womb would affect the nervous system then and afterwards. Afterwards they might affect it seriously and might not. I don't know that there is necessarily any affection to the nervous system, or any serious affection, but there might be, and those injuries would be of that character." The ground of objection was that the witness was called upon to testify as to the *dicta* or opinions of the profession generally as to the general effect of miscarriage, and not confined by the court to injurious effect to the plaintiff, and the plaintiff's pleadings did not authorize a recovery for such future injuries to Mrs. Powell.

(13.) Because the court admitted, over the objection of defendant's attorney, the mortuary table, as published in

70 *Ga.* 845, the ground of objection being that they were not material or admissible under the pleadings.

The court overruled all the grounds except the eleventh, but granted a new trial on that one; and to this the plaintiffs excepted. The defendant filed a cross-bill of exceptions, alleging error in the overruling of the other grounds.

FOSTER & LAMAR, for plaintiffs.

FRANK H. MILLER; J. S. & W. T. DAVIDSON; M. P. CARROLL, for defendant.

BLECKLEY, Chief Justice.

The suit was for a personal injury to Mrs. Powell, and the jury rendered a verdict for $7,500 damages. The court, upon motion of the defendant, granted a new trial on the sole ground that the damages were excessive. There were divers other grounds embraced in the motion, all of which were presented in the Supreme Court by a cross-bill of exceptions. We shall dispose of the questions raised without much explanation as to the machinery by which they were evolved.

1. Except in a mind disappointed by the verdict, there could be no possible doubt of the legitimacy of the jury. It was legally selected and organized. Whether, on a new trial in a civil case, the jury shall be taken from the grand jury, or the traverse juries, or partly from each, is matter of discretion with the presiding judge. Acts of 1884–5, p. 93; Code, §§2925, 3932; 68 *Ga.* 433; 72 *Ga.* 635. No abuse of the discretion appears in this case.

2. To insist on a prosecution for felony, in order to open the way to a recovery for the civil injury, is to walk backwards. The old law on the subject has been left behind. Prosecution for felony is not a condition precedent to the recovery of damages (actual or punitive) for a personal injury. Code, §2970; 74 *Ga.* 857.

3. The testimony of Mrs. Powell, the plaintiff, was taken.

by interrogatories.   One of the cross-interrogatories, inquiring as to her ability to attend court, was not answered in express terms either way.   But the answer she gave clearly implied an affirmative response—so clearly that there could be no rational doubt of its meaning.   Where a cross-interrogatory, such as, "Are you not able to attend the court in person?" is clearly answered in the affirmative by implication, the failure to answer expressly will not oblige the court to suppress or exclude the direct interrogatories and answers.

4. It was suggested, but I believe not argued, that as Mrs. Powell resided in the county and was not unable to appear and testify in person, her evidence, taken by interrogatories, could not be read.   A female witness, though a party to the suit, and residing in the county, is not obliged, as a general rule, to attend court in order to testify.   The Code, §3878, in enumerating those whose testimony may be taken by interrogatories "at the instance of either party," specifies as one class "all female witnesses."   Being a party does not hinder the examination of a witness by interrogatories at his own instance, on other grounds recognized by statute. *Cutcher vs. Jones*, 41 *Ga.* 675.  And we see not why being a party should take away the privilege of a female witness.   Doubtless, for special reasons shown to the court, personal attendance might be required, but the present instance stands on the general rule.

5. The evidence of Mrs. Davis objected to was contained in answers to interrogatories, and these appear in the record, but neither from the motion for a new trial nor from the bill of exceptions can we ascertain what particular part or parts of this evidence were pointed out to the court below as objectionable.   Certainly the whole of it was not inadmissible.   This being so, the objection was probably too broad, comprehended too much, and for that reason might have been overruled.   Unless all the evidence of a witness is objectionable, the particular part which is objectionable should be specified in the motion for a new

trial or in the bill of exceptions. This may be done either by quotation or by reference to the brief of evidence; but if by reference. it should be definite and distinct, so that this court could know where to begin and where to stop. The reference which we have now is to the whole of Mrs. Davis's evidence, or the whole of certain answers, but as neither of these wholes is, as a whole, bad, we cannot say that the court erred in overruling the objection.

6. The questions objected to as leading were not well formulated, but considering the sex and age of the witness, and the nature of the subject-matter, their form neither led nor misled her, in all probability We mean she would, most probably, have testified as she did had the questions been faultless. It is not good practice, however, to put questions with a single alternative, when it can be avoided without too much circumlocution.

The witness being a matron forty years of age, such questions as whether or not the plaintiff suffered an abortion? and whether or not flooding was caused thereby? are not so leading as to require the exclusion of the answers.

7, 8, 9. Medical evidence of the condition of the injured party after the. suit was brought, as well as before, is admissible to show the nature and effects of the injury, and whether temporary or permanent.

If the injury resulted in abortion, evidence touching the consequences of abortion upon the mother's future health is evidence relating to the past injury, and not to future injuries.

A question put to a medical witness thus, " How would those troubles affect the nervous system ?" does not inquire for dicta or opinions of the profession at large, but for the individual opinion of the physician under examination. And though not confined to the nervous system of this particular woman, the question is relevant as an inquiry concerning a pathological law to which her system, as being that of a woman, is or may be subject.

These propositions, I venture to say, carry the evidence of their truth upon their face. None but a zealous advocate, whose case has suffered from their application, would think of disputing them. Brief as they are, they rule several grounds of the motion for a new trial.

10. Where there is evidence tending to show that the state of impaired health and diminished ability to labor attributable to the injury may endure through life, the mortuary tables are admissible in evidence to aid the jury in dealing with the element of time involved in their computation of the damages.

There was such evidence in this case, and the tables were, therefore, relevant. One who is to live long in pain is more damaged than one who has to endure suffering but for a brief term. Test this by applying it to two cases and contrasting them, the first in which pain is to last only for a day, and the second for twenty years. It may be thought that the loss of ability to labor is not pain, but this is a mistake. There is no greater blessing of life than ability to labor, even though the proceeds may belong to another. It is better for happiness, as well as for virtue, to work for nothing than to be idle. A physical injury that destroys the power of a human being to labor is one of the most serious injuries that it is possible to inflict. True, it is not to be measured by pecuniary earnings where the suit is by a married woman; for such earnings, as a general rule, belong to the husband, and the right of action for their loss is in him but the wife herself has such an interest in her working capacity as that she can recover something for its destruction and what she is to be allowed ought to be more or less according to the length of time during which her privation is likely to continue. Such privation may well be classed with pain and suffering, especially where it involves the breaking up of established habits. To man or woman accustomed to work, enforced idleness is torture.

11. What the plaintiff's father said several days after the

Powell *et ux. vs.* The Augusta and Summerville Railroad Company, and *vice versa.*

alleged injury was not evidence against her. The special facts did not warrant any departure from the general rule, that what one person says is not to be heard to affect the interest of another. The father's presence at the time of the injury has no relevancy to the question. He was competent to testify but not to talk. Though the plaintiff's father was present when she received the injury, his declarations, made several days afterwards, are not evidence for the defendant, even under the special circumstances of the present case.

12. On the question whether the court ought to have delivered specific instructions to the jury touching the loss of the unborn child, as an element of damage to the mother, we have examined the general charge as given; and if the jury understood it, and we take it for granted they did, they were by it guarded from any danger of going wrong on that subject. The charge brought to their attention such matters as they were to consider in assessing damages, and this was not in the list. Under the charge as given, it was not at all necessary to caution the jury against allowing damages for disappointed maternal hopes and anticipations.

13. This was a second verdict for the plaintiff, and on her right to recover, the evidence is no less satisfactory to us than it was to the court below. As to the mere right of the plaintiff to recover, the verdict is not contrary to law, to evidence, to the weight of evidence, or to the principles of equity and justice; to the extent of settling the right, the verdict should stand as final and conclusive.

14. The second verdict was for more than twice the amount of the first. In amount only was the latter unsatisfactory to the judge who presided at the trial. He thought the sum awarded was too much. We do not know whether it was or not, but we do know that both verdicts gave heavy damages. In neither of them were the damages nominal, or anything like it. Two juries differed, and differed substantially on the mere question of dollars and

cents, each of them recognizing the right to recover a large sum. Two verdicts finding heavy damages for the alleged injury, having been rendered, the second for more than twice as much as the first, the wide difference between them in amount may, in the light of the whole case, justify the judicial mind in suspecting bias or prejudice, and the presiding judge having ordered a new trial because the second finding was excessive, and this court not being thoroughly convinced that there was error in so doing, affirms the judgment, with the qualification and direction that the plaintiff's right to recover stand and remain established, and that the new trial be had upon the question of amount, and that only. Let the damages be assessed again, as speedily as practicable, by another jury.

We exercise the power of direction under the Code, §§218, par. 2, 4284. This we do without overlooking the case of *Savannah Railway vs. Harper*, 70 *Ga.* 120. We deem the powers of this court, under the Code, much more ample in the matter of awarding direction than are those of the superior court to shape what may be termed special proceedings or results without direction from this bench.

Judgment affirmed.