TUCKER, by next friend, *v* HOWARD L. CARMICHAEL & SONS INC.

No. 17487. Argued June 12, 1951—Decided July 9, 1951.

202

G. *Seals Aiken* and *Luther Alverson,* for plaintiff.
*Rex T. Reeves* and *Haas & Hurt,* for defendant.

DUCKWORTH, Chief Justice. ■ The decisive question here presented has never been passed upon by this court, and, hence, we must reach a decision without the benefit of previous rulings on that point by a Georgia court. There are numerous decisions by the courts of other States, but they are not unanimous. Without citing each specific case, reference is made to 16 American Jurisprudence, 56, § 75; 43 Corpus Juris Secundum, 270, § 104; 20 A.L.R. 1505 (Annotation); 97 A.L.R. 1524 (Annotation);

and 10 A.L.R. 2d, 1059 (Annotation), where all the cases are cited. Since some of the courts, such as Ohio (Williams *v.* Marion Rapid Transit Co., 152 Ohio 422, 87 N. E. 2d, 334, 10 A. L. R. 2d, 1051), and Minnesota (Verkennes *v.* Corniea, 229 Minn. 365 (38 N. W. 2d, 838, 10 A.L.R. 2d, 634), hold that a child may maintain a suit for damages for a prenatal injury, and other courts, such as Massachusetts (Dietrich *v.* Northampton, 138 Mass. 14, 52 Am. R. 242; Bliss *v.* Passanesi, 95 N. E. 2d, 206), and New York (Drobner *v.* Peters, 232 N. Y. 220, 133 N. E. 567), hold that such an action is not maintainable, this court recognizes at the outset the conflict in decisions of other States as well as the absence of any binding precedent or Georgia statute on the subject, and will reach a decision based upon sound principles and fair deductions from the common law, which is, in such a case, of force in this State. *Grimmett* v. *Barnwell,* 184 *Ga.* 461 (192 S. E. 191, 116 A.L.R. 257); *Hornsby* v. *Smith,* 191 *Ga.* 491 (13 S. E. 2d, 20, 133 A.L.R. 684); *Foster* v. *Withrow,* 201 *Ga.* 260 (39 S. E. 2d, 466). An examination of the decisions of other jurisdictions discloses that those courts are in disagreement as to the common law, each asserting, without supporting the assertion with any convincing authority, that their respective conflicting holdings on this question are in accord with the common law. This court regards Blackstone as an authority on the common law. Accordingly, we quote from Book I, page 130, of Blackstone's Commentaries on the Laws of England as follows: "The right of personal security consists in a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his health, and his reputation. Life is the immediate gift of God, a right inherent by nature in every individual; and it begins in contemplation of law as soon as an infant is able to stir in the mother's womb. . . An infant in ventre sa mere, or in the mother's womb, is supposed in law to be born for many purposes. It is capable of having a legacy, or a surrender of a copyhold estate, made to it. It may have a guardian assigned to it; and it is enabled to have an estate limited to its use, and to take afterwards by such limitation, as if it were then actually born. And in this point the civil law agrees with ours."

Thus it is seen that Blackstone says that, in contemplation

of the common law, life begins when the child is able to stir in the mother's womb. It can have a legacy, can own an estate, and a guardian can be assigned to it. It can not seriously be denied that the purpose of the common law in allowing the appointment of a guardian for the unborn child is to make available processes of the law for the protection and preservation of the properties belonging to the child. There is nothing in the common law to indicate that it would withhold from such a child its processes for the purpose of protecting and preserving the person as well as the property of such child. It would therefore seem to us to be an unwarranted reflection upon the common law itself to attribute to it a greater concern for the protection of property than for the protection of the person. Whether the recognition of the right of property in the unborn child is founded upon the welfare of the child or of society, each of these is more vitally concerned about the physical impairments of the child itself than about its property. It would therefore be illogical, unrealistic, and unjust—both to the child and to society—for the law to withhold its processes necessary for the protection of the person of an unborn child while, at the same time, making such processes available for the purpose of protecting its property.

While this court, as stated above, has never ruled upon the question presented in the present case, it has made significant utterances regarding other rights of an unborn child. We do not refer to such decisions as precedent in point to sustain the ruling we shall make, but we do so because they illuminate vital portions of this question. In *Morrow* v. *Scott,* 7 *Ga.* 535, it was held that an unborn child, in ventre sa mere at the time of the death of its cousin but born within the usual period of gestation after the death of the cousin, was entitled as an heir to a distributive share in the estate of the cousin, citing Blackstone as authority for the ruling. The opinion there cites also Hall *v.* Hancock, 15 Pickering's Rep. 255, for the ruling that, in general, a child is considered as in being from the time of its conception where it will be for the benefit of such child to be so considered. This court then adds that "this rule is in accordance with the principles of justice, and we have no disposition to innovate upon it, or create exceptions to it." The opinion also cites with

approval Wallis *v.* Hodson, 2 Atkyns 116, where Lord Hardwicke held that, under both rules of the common law and the civil law, a child in ventre sa mere is in rerum natura and is as much one as if born in the father's lifetime. In *Medlock* v. *Brown,* 163 *Ga.* 520 (136 S. E. 551), this court held that a deed to one as trustee for a married woman "and her children" included an unborn child as one of the beneficiaries of the trust. The deed was executed November 27, 1874, and the child was born January 6, 1875. The opinion, concurred in by all of the Justices, was prepared by Mr. Justice Beck and reviewed a number of older decisions of this court which had held that similar language in deeds and wills embraced only those children who had been born at the time the deed was executed or the testator died; and it then said at page 522: " . . But in none of these cases does it appear that the afterborn child was en ventre sa mere at the time of the death of the testator, where a will is relied upon, or at the time of the excution of a deed, where a deed is relied upon, as creating an estate in the afterborn child. And we are of the opinion that this makes a radical difference—such a radical difference that where a deed, as in this case, conveys to a named grantee in trust for a woman and her children, this would include a child en ventre sa mere, especially where the unborn child was actually born within a month or two after the execution of the deed, showing that the child which was in its mother's womb had already passed the time when the foetus was quick." In the instant case, the child was actually born in slightly more than three hours after sustaining the injury while in its mother's womb. By describing the difference in the previous cases—where it did not appear that the child was in ventre sa mere—from the case there dealt with—where the child was in ventre sa mere—as being a radical difference, this court unmistakably signified high regard for the importance of the difference in the rights of a child that had been conceived and one conceived subsequently. That opinion also manifested a greater concern for the child that is fully developed, with all of its members, in the mother's womb. The child here was fully developed at the time of its injury, beyond doubt, and is entitled to these radical and special considerations.

In one of the earlier cases—and perhaps the most famous

decision on the question with which we are now dealing—in an opinion written by Mr. Justice Holmes who later became a Justice of the Supreme Court of the United States, the Massachusetts court in Dietrich *v.* Northampton, 138 Mass. 14 (supra), asserted that provisions of the criminal law for punishment for injury to an unborn child were irrelevant to the question of such child's right to maintain an action after its birth for prenatal injury. This court will not overlook, however, the provisions of the criminal law of this State, Chapter 26-11 of the Georgia Code of 1933, providing punishment for those inflicting injury upon an unborn child. Code § 26-1103 provides that, if under circumstances therein described an injury to the mother and her unborn child would, if the mother dies, constitute murder, then, for the wilful killing of the unborn child, the punishment shall be death or life imprisonment for the person committing the crime. The purpose of criminal law is to protect both the individual and society from criminal conduct. If the killing of the unborn child is regarded by the law as being sufficient injury to society to justify taking the life of the perpetrator of the crime, then, to be logical and just to the injured child, the law must allow it to employ legal process and recover damages for the injury inflicted upon it. It would be contrary to every principle of right and justice, which are the very essence of law, to deny such rights to the injured child. There is nothing in the common law denying such a right to the child.

We have read with much care and with great interest the decisions allowing and those disallowing the maintenance of such a suit. They advance many persuasive arguments in support of their respective and conflicting rulings. We shall not here undertake to set forth those reasons. We are content to say that for the reasons set forth in this opinion we are satisfied that, without any legislative action, courts of Georgia have the authority now, based upon the common law, to grant such relief, and that the petition here alleged a cause of action. We would quote now, as we did in *Hornsby* v. *Smith*, 191 *Ga.* 491 (supra), at page 496, from the opinion of the Michigan court there cited as follows: "That courts have failed to apply the remedy has ever been felt a reproach to the administration of

the law; and the fact that the people have regarded this neglect of duty on the part of the courts so gross as to make that duty imperative by statutory law furnishes no evidence of the creation of a new right or the giving of a new remedy, but is a severe criticism upon the courts for an omission of duty already existing, and now imposed by statute upon them, which is only confirmatory of the common law." The court erred in sustaining the demurrer and dismissing the petition.

The demurrer to the defendant's answer was obviously not filed within the time required by law. Code (Ann. Supp.), § 81-301 (Ga. L. 1857, p. 107; 1946, pp. 761, 773). The order of the court on this demurrer which is here assailed recites that it was dismissed because it was not filed within the time required by law. But counsel for the plaintiff in error insists that the ruling of this court in *Mayo* v. *Owen,* 207 *Ga.* 641 (63 S. E. 2d, 649), sustains an attack upon the ruling here. The court in this case did precisely what this court said the trial court in that case should have done. The judgment there under review was one overruling the demurrer, thus passing on the merits, and we held that in thus ruling on the merits the judgment was materially different from what it should have been had the demurrers been dismissed instead of being overruled. The demurrers here, not having been filed at the time required by law, were properly dismissed, and the exception to that judgment is without merit. For the reasons stated in division 1 of this opinion, the judgment is reversed.

*Judgment reversed. All the Justices concur.*