19308. HORNBUCKLE, by Next Friend, *v.* PLANTATION PIPE LINE COMPANY.

HAWKINS, Justice. This case is here on certiorari from the Court of Appeals, excepting to a holding by that court, in *Plantation Pipe Line Co.* v. *Hornbuckle,* 93 *Ga. App.* 391 (91 S. E. 2d 773), that "A born child cannot maintain an action for tortious injuries sustained by it as an embryo or foetus not quick in its mother's womb," in which opinion that court, in reversing the trial court, stated: "Since the plaintiff was not quick in her mother's womb at the time of the injuries complained of, the court erred in overruling the general demurrer to the petition." *Held:* "For every right there shall be a remedy" (Code § 3-105), and "A physical injury done to another shall give a right of action," (Code § 105-601), and "Every person may recover for torts committed to himself." Code § 105-107. Where a child is born after a tortious injury sustained at any period after conception, he has a cause of action. Kelly *v.* Gregory, 125 N. Y. S. 2d 696 (282 App. Div. 542); *Tucker* v. *Howard L. Carmichael & Sons,* 208 *Ga.* 201, 206 (65 S. E. 2d 909). "One cannot examine the cases in which a child, physically or mentally deformed for life as a result of prenatal injuries caused by the wrongful act of another, has been denied a right of recovery for such injuries, without being impressed by the harshness of such a result." 10 A. L. R. 2d 1059, 1071. See also 27 A. L. R. 2d 1250, 1259. As was said in the *Tucker* case (208 *Ga.* 201, 206), supra, "It would be contrary to every principle of right and justice, which are the very essence of law, to deny such rights to the injured child." At what particular moment after conception, or at what particular period of the prenatal existence of the child the injury was inflicted is not controlling, for, as was said in *Morrow* v. *Scott,* 7 *Ga.* 535, 537, "In . . . general, a child is to be considered as *in being,* from the time of its conception, where it will be for the benefit of such child to be so considered." While we realize that cases such as this might present extreme difficulties as to proof, we are not concerned with that question here. The petition alleges that the plaintiff, who is now in life, received prenatal injuries caused by the alleged negligent operation of an automobile by the defendant, which caused it to collide with the automobile in which the plaintiff's mother was riding while pregnant, which resulted in the plaintiff being born with a deformed right foot, right ankle, and right leg, and in passing upon the demurrer these allegations must be taken as true. If a child born after an injury sustained at any period of its prenatal life can prove the effect on it of a tort, it

would have a right to recover. The trial court having overruled a general demurrer to the petition, the Court of Appeals erred in reversing that judgment.

*Judgment reversed. All the Justices concur, except Almand, J., who dissents. Duckworth, C. J., concurs in the judgment, but not in all that is said in the opinion.*

ARGUED MAY 15, 1956—DECIDED JUNE 12, 1956—REHEARING DENIED JULY 11, 1956 AND JULY 24, 1956.

*G. Ernest Tidwell, John L. Westmoreland, John L. Westmoreland, Jr.,* for plaintiff in error.

*Moise, Post & Gardner, R. Emerson Gardner,* contra.

DUCKWORTH, C. J., concurring specially. The opinion in *Tucker* v. *Howard L. Carmichael & Sons,* 208 *Ga.* 201, shows plainly that I believe in making available the legal processes for the protection of the person of every human being from injuries resulting from tort. But I believe we went as far as sound logic and legal principles will permit. That ruling authorizes a child to sue for injuries it sustained while in its mother's womb, provided it was quick, hence a human being at the time of such injury.

The ruling of the majority in this case extends that ruling to allow the child to maintain a suit for damages to the cell from which it came, even though the cell had been conceived ten seconds. It ignores reality and fact. It simply by-passes the inflexible rule of law that for one to maintain a suit for personal injury, the injury must be either to the person of the suer or that of a relative or one upon whom he is dependent. This indispensable requisite is completely absent here. The cell is not the person of anyone, and whether it becomes such is dependent upon the processes of nature which raise it from a mere cell to a human being. When I say that one can not sue for an injury to a stranger or the property of a stranger, there can be no logical denial. The majority ruling allows the baby to sue for injury, not to itself, for it is not in being at the time of the injury and hence could not have suffered personal injury; nor can it claim ownership of the injured cell at a time when it had never lived.

The ruling of the majority may well cause our courts of justice to become dumping grounds for faked and fraudulent suits. They may well became the helpless instrumentalities through which helpless people are robbed by crooks. If an

unscrupulous doctor, and I am sure that great profession has some, testifies as an expert, where he is not required to give facts for the basis of his opinion, that the cell from which the suing baby came was injured five seconds after conception, and this testimony is not contradicted, the court which knows that such injury was neither to the plaintiff nor to anything that belonged to it, must stultify itself and give judgment for damages. If a baby can sue for injuries sustained five seconds after conception, as the majority rules, why not allow such suits for injuries before conception, even unto the third and fourth generations?

We have the law confused too much already. In *Biegun* v. *State*, 206 *Ga.* 618 (58 S. E. 2d 149), it was said, I believe incorrectly, that as a matter of law a baby did not become quick until four months after conception. The Court of Appeals had no choice but under the Constitution they were compelled to follow that unsound ruling of ours. Doing so, they held that as a matter of law the child had not become quick at the time of the accident which occurred six weeks after conception. I think that ruling was erroneous, and that our ruling upon which it was based was erroneous, because it is a question of fact to be proven by evidence as to when the foetus becomes quick. For this reason alone I concur in the judgment of reversal.

ALMAND, J., dissenting. In *Tucker* v. *Howard L. Carmichael & Sons*, 208 *Ga.* 201, which was a case of first impression in this State, we held that an unborn child could sue for a tortious injury sustained by it while in its mother's womb at a time when the mother, quick with child, was on the way to the hospital to give birth to the child, where the child was born slightly more than 3 hours after the injury. In that case, we placed the ruling on Blackstone's statement that at common law the life of an unborn infant "begins in contemplation of law as soon as the infant is able to stir in its mother's womb" (1 Blackstone, p. 130). We there held that the unborn child in its mother's womb was a "person" within the meaning of Code § 105-107, which provides that "Every person may recover for torts committed to himself." The majority opinion in the instant case in effect holds that an infant becomes a "person" from the moment of conception, with the right to sue for a tortious injury after its birth. We reached

the limits of reasonableness in the *Tucker* case, and I am unwilling now, in the absence of legislation, to extend that case and to hold that the life a person, possessing or forming the subject of individual personality, begins when the male and female elements of procreation unite to form the seed of a person. Assuredly, we would not call an acorn a tree. The eternal riddle, which came first, the egg or chicken? can be solved by saying they are one and the same.

The majority opinion opens the field of conjecture and speculation as to the time when conception takes place. How can there ever be a definite time fixed when the egg in the body of the mother is fertilized by the father's spermatozoa? Does it take place in 1 minute, or 2 hours, or 2 days, or 2 weeks after copulation? The time the foetus first stirs in the mother, which is the beginning of infant life, the mother knows, but neither the mother nor anyone else can fix the exact time or date of conception.

Our criminal statutes clearly recognize the difference between an unborn child that is quick in its mother's womb and one that is not quick. Code § 26-1101 makes it a felony to administer drugs, etc., to a woman pregnant with child with intent to destroy the child, where the mother or child dies, and in such instances the expression "quick with child" means an unborn child "so far developed as to be quick—so far developed as to move or stir in the mother's womb." *Summerlin* v. *State,* 150 *Ga.* 173, 176 (103 S. E. 461). Code § 26-1102 makes it a misdemeanor to administer drugs, etc., to a "pregnant woman" with intent to produce a miscarriage. Code § 26-1103 makes it a capital offense to illegally kill an unborn child so far developed as to be ordinarily called "quick" by injury to the mother or child. In *Hunter* v. *State,* 29 *Ga. App.* 366 (115 S. E. 277), it was held that evidence that a mother was 4 months pregnant was not sufficient to show that she was pregnant with child, or that the child was so far developed as to be "quick."

The petition in the instant case charges that the injury to the mother occurred on August 29, 1952, and the plaintiff was born on April 29, 1953, 8 months later. The petition alleges that the mother was pregnant at the time of the injury, but there are no allegations in the petition that the child was so far de-

veloped as to be quick or to stir in its mother's womb. The normal duration of pregnancy in human beings is 10 lunar months or 280 days. Wharton & Stille, "Medical Jurisprudence," sec. 303; Gradwhol, "Legal Medicine," p. 804. "Quickening" is defined in Black's Law Dictionary as "The first motion of the foetus in the womb felt by the mother, occurring usually about the middle of the term of pregnancy." Taking the period of 280 days as being the normal period, and under the allegations of the petition it appearing that the plaintiff's mother was pregnant for about 6 weeks at the time of the alleged injury to her, we do not have to determine in this case whether the court can or cannot take judicial notice as to the time when quickening takes place, since our statutes clearly recognize the difference between "a pregnant woman" and "a woman pregnant with child"; and, as we have said that the meaning of the words "pregnant with child" is that the child has so far developed as to be quick, or to stir in the mother's womb, it was incumbent upon the plaintiff in this case, by proper allegations, to show that the child was quick, since, in my opinion, under the *Tucker* case, supra, a right of action would not exist in the plaintiff unless there were allegations in the petition which showed that the child was quick at the time of the injury to the mother.

The allegations in the petition failing to show that the plaintiff was quick in the mother's womb at the time of the alleged injury to the mother, the Court of Appeals correctly held that the petition was subject to general demurrer.