[Civ. No. 23870. Second Dist., Div. Three. June 1, 1960.]

ENRIQUE (HENRY) CASTRO, Respondent, v. SAM MORITA et al., Appellants.

*Assigned by Chairman of Judicial Council.

A. P. G. Steffes and John Y. Maeno for Appellants.

Toxey H. Smith and Dwight H. Lindholm for Respondent.

SHINN, P. J.—The present action was for personal injuries sustained by plaintiff Castro when he was knocked down by a hand-truck operated by defendant, Sam Morita. In a jury trial Castro recovered a judgment of $30,000 against Morita and others. In new trial proceedings plaintiff accepted a reduction of the judgment to $20,000; defendants appeal from the modified judgment.

It is conceded by defendants that there was substantial evidence of their liability. Nevertheless, they ask that a new trial be ordered as to all issues. Their serious contentions are that the amount of the reduced judgment is excessive and that there was serious irregularity in the court's permitting plaintiff's counsel to discuss new matter in his closing argument and in denying defense counsel an opportunity to reply thereto.

We shall consider the two contentions together. At the time of trial Castro was 60 years of age. He was without schooling, spoke only Spanish; after coming to the United States in the early twenties he was a railroad laborer for two years; he became a vegetable peddler and followed that occupation until 1938 when he became employed by a Mrs. Sanchez, for whom he picked up vegetables at a wholesale market each morning, after which he assisted her in the store by waiting upon customers. His injuries occurred at the market on No-

vember 30, 1956; he has not worked since that time. Plaintiff testified that a Mrs. Estrada, in whose home he had been living, had been taking care of him ever since the accident and that he had promised to pay her $100 per month when he should get work. The nature of his injuries will be described later.

A major factor in the award of damages was the claimed loss of earnings and earning ability. The record upon this issue presents an unusual situation.

In his opening statement plaintiff's attorney told the jury the proof would show that plaintiff had been earning between $200 and $300 per month. In his opening argument he made the same statement and claimed for plaintiff a life expectancy of 20 years. He also alluded to testimony of plaintiff that he had promised to pay Mrs. Estrada $100 per month when he should get work. In his closing argument the attorney placed upon a blackboard computations of damages based upon an expectancy of life of 10 years and assumed earnings of $200 per month, plus $100 per month which plaintiff had promised to pay Mrs. Estrada. The total figure was about $42,000. Defendants' attorney registered objection to this argument upon the ground that it was new matter and not at all responsive to any argument which he, himself, had made. The court was of the opinion that defendants' attorney had argued the same matters to the jury and denied his request for permission to address the jury on the subject. As a matter of fact, defense counsel in argument had not mentioned the matter of plaintiff's earnings, although he made light of the claim that plaintiff was seriously disabled. The odd feature of this situation is that there was no evidence whatever respecting the amount of the past earnings of plaintiff. ·He was not questioned on the subject. He had been working for Mrs. Sanchez for 18 years. He testified "I used to work even 14 hours every day. It wasn't too hard a job but it was 14 hours. . . ." If the statement of his attorney was correct it would have meant that Mrs. Sanchez had been paying plaintiff between $200 and $300 per month. We find in the briefs the same treatment of the subject. Plaintiff's brief discusses damages upon the assumption that plaintiff had been earning and had had the ability to earn from $200 to $300 per month. Defendants' brief does not mention the subject nor call attention to the fact that there was no evidence respecting plaintiff's earnings.

The loss of earnings and earning ability was, as we have said, a major factor in the computation of damages. The

absence of evidence was overlooked at the trial and on the motion for a new trial. No one challenged the statements of plaintiff's attorney with respect to plaintiff's earnings. The only explanation would be that both counsel and the court believed during the trial and in the hearing on the motion for a new trial that there was uncontradicted evidence that plaintiff had been earning between $200 and $300 per month.

We have been obliged to take notice of this state of the record in considering the claims of error and excessive damages, but we think we must put aside the fact that there was no evidence respecting plaintiff's earnings. We must therefore assume, as the attorneys, the court and the jury assumed, that there was uncontradicted evidence that Mrs. Sanchez had been paying plaintiff between $200 and $300 per month for his services, and no evidence he was not worth it.

Since the court's determination that $20,000 is a fair and reasonable amount as compensation is necessarily based largely upon the impairment of plaintiff's ability to perform labor, we have reviewed the evidence upon that subject. We conclude that there was credible evidence of substantial loss of earning capacity. Plaintiff suffered a broken hip on November 30, 1956; it was successfully repaired in the General Hospital with a Neufeld nail. Plaintiff was hospitalized for 17 days; he was sent home by ambulance; the wound became infected and plaintiff returned to the hospital in February 1957; in March he was in the hospital again; the abscess was healing; he was started upon using crutches and was advised to use two canes; in August he returned to the hospital; he was walking with slight pain and using canes. In January 1958, an examination in the hospital disclosed that he was still "partially" disabled. In August 1958, he was walking well, with a slight limp and only occasional pain; he was advised to return in a year. At the time of the trial plaintiff was still suffering some pain. He could walk four blocks but became tired; the wound hurt when he sat down; he could not walk well and could not bend over; he could not drive; he could not lift things. His medical and hospital expenses came to $550.76. He had not worked since the accident; he had tried to get a job "but when they see me in my condition they don't give me a job."

[■■] With respect to the matter of argument to the jury, we agree with the attorneys for defendants that it is the

duty of plaintiff's attorney to present the case for the plaintiff fully in opening argument and not to hold back points for use in the closing argument to which defense counsel cannot reply. It is a matter in which the court can and should exercise control in the interests of fairness, but we do not believe this was a case in which the court should have intervened.

As previously stated, in his opening argument plaintiff's attorney asked the jury to compute plaintiff's loss of earnings, past and future for a period of 20 years at $200 and at $300 per month and to take into consideration the fact that plaintiff had promised to pay Mrs. Estrada $100 per month for her services. Defense counsel had an opportunity to reply to this line of argument but did not do so. The closing argument did not come as a surprise except for the fact that the figures were placed upon a blackboard. There were patent errors and miscalculations in it that could have been pointed out to the jury but they had also been made in counsel's opening argument. We cannot say that it was an abuse of discretion, or even error, to refuse permission for further argument.

It must be apparent from the facts we have stated that it would take unprecedented action upon our part to reduce the amount of the judgment or to reverse it for retrial of the issue of damages. Plaintiff's medical and hospital expense will cost him $550.76; the scant testimony of plaintiff that Mrs. Estrada had been "taking care" of him all the time would indicate that she might be entitled to some compensation for her services. Although there was no evidence that plaintiff had promised to pay for nursing services as distinguished from his living expenses the court no doubt gave consideration to this fact in reducing the amount of the judgment.

Compensation for pain and suffering, past and future, could properly have been granted in a substantial amount. The pain that came directly from the broken hip was not the only kind of suffering to which plaintiff was subjected. He would remain conscious of the danger of another accident to the weakened hip which might render his condition much more disabling.

The argument of defendants implies that plaintiff had made no serious effort to obtain employment and that he had the ability, but not the desire to work. The same argument was

made to the jury and the court and was rejected. It is implicit in the verdict and the modified judgment that plaintiff was believed to be honest and truthful and that his incapacity was real and not exaggerated. He had always been a worker. The prospect of a future of enforced idleness would naturally be depressing and a type of mental suffering. It was of such men that Chief Justice Bleckley wrote in 1887: ''It may be thought that the loss of ability to labor is not pain, but this is a mistake. . . . There is no greater blessing of life than the ability to labor. . . . A physical injury that destroys the power of a human being to labor is one of the most serious injuries that it is possible to inflict. . . . Such privation may well be classed with pain and suffering, especially where it involves the breaking up of established habits. To man or woman accustomed to work, enforced idleness is torture.'' (*Powell* v. *Augusta & S. R. Co.*, 77 Ga. 192 [3 S.E. 757].)

When a reasonable allowance is made for these items of damage the remainder does not appear excessive as compensation for plaintiff's loss of earnings and of earning ability.

All the arguments made on the appeal were forcefully made to the trial judge on the motion for a new trial. After weighing the argument and the evidence he reduced the amount of the verdict by one-third. This was the well considered performance of his duty in entertaining and ruling upon the motion. Where the court after reweighing the evidence and considering carefully the claim of excessive damages on motion for a new trial has reduced the amount of the verdict and judgment in a substantial amount, its action could only be vacated if the reviewing court was convinced that the modified judgment was so excessive as to be unsupportable in reason. In our opinion the decision was eminently fair. We do not disagree with it.

In view of defendants' concession that the evidence was sufficient to support the judgment, as modified, that question is not before us.

The judgment is affirmed.

Vallée, J., and Ford, J., concurred.

A petition for a rehearing was denied June 28, 1960, and appellants' petition for a hearing by the Supreme Court was denied July 27, 1960.